# Exhibit F

# green tree



COPY

P.O. Box 6172
Rapid City, SD 57709-6172
1-800-643-0202
Fax 1-866-870-9919
GTServicing.com

June 11, 2013

SHANNON CLARK
███████████████

#4

RE:   Green Tree Servicing LLC ("Green Tree") Account Number: ████████

Dear Shannon Clark:

Thank you for your recent inquiry regarding the above-mentioned account.  Please be assured Green Tree Servicing LLC ("Green Tree") takes matters such as this seriously.

We regret any dissatisfaction you may have encountered during the modification process.  Your income is calculated at the time of the trial period plan.  Based on documents received, the income was calculated correctly.  Please be advised the modification has been processed as outlined in the attached agreement and no changes are able to be made at this time.

Below is a breakdown for the new unpaid principal balance:

| | |
|---|---|
| $243,046.34 | Unpaid Principal Balance |
| $17,722.10 | Capitalized Amount for Advances ($5,063.40) plus Interest ($12,258.70) |
| -$776.96 | Less Borrower's Contribution |
| -$1,123.05 | Less Forgiveness Amount |
| $258,868.43 | New Unpaid Principal Balance |

Pursuant to the signed agreement, the new monthly payment amount on the home is $1,381.76 effective with the April 1, 2013 payment.  This monthly payment amount was calculated accurately utilizing 298 months, instead of rounding to 300 months, along with the 2.00% rate and $258,863.43 unpaid principal balance.

Lastly, please find enclosed a copy of the escrow analysis completed on February 6, 2013 reflecting calculation of the $274.29 escrow shortage.

Thank you for your business.  If you have any further questions or concerns, please do not hesitate to contact our Customer Service Department at (800) 643-0202, Monday - Friday, 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CT.

Sincerely,

Green Tree
Customer Service

/bkw/46/

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

This is an estimate of activity in your escrow account during the coming year based upon anticipated payments to be made from your escrow account.

Projected Escrow Disbursements:
Hazard      $1,241.00
Tax         $2,050.52

*[handwritten: INS = F553⁰⁰ - pd in March]*

*[handwritten: Taxes = 2089.44]*

Total Projected Escrow Disbursements: $3,291.52  Escrow Payment Calculation: $3,291.52 / 12 = $274.29.

After performing your initial escrow analysis, your escrow account has a shortage of $274.29.  You may either remit the escrow shortage or it will be spread over the next 60 months. To remit the escrow shortage, please send shortage payment to:

**Green Tree**
**Attn: Escrow Dept L800-LM**
**345 St. Peter Street**
**St. Paul, MN 55102**

Please contact us at 1-800-643-0202 if you have any questions.

Respectfully,

Escrow Administration
Green Tree

* Green Tree Servicing LLC and related entities, including, for certain accounts, in Pennsylvania, Green Tree Consumer Discount Company.

**If you filed bankruptcy, this is not an attempt to collect a debt but is instead a legally required notice regarding your escrowed taxes and insurance.**

Investor Loan #            0

After Recording Return To:
Green Tree Servicing LLC
7360 South Kyrene Road, T214
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two-Step Documentation Process)

Borrower ("I")1: SHANNON CLARK
Lender ("Lender"):  Green Tree Servicing LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 08/09/2005
Loan Number: ██████████ Recorded 08/19/2005 Instrument No.███████████
Property Address [and Legal Description if recordation is necessary] ("Property"):
███████████████████

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable
Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on
the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may
previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this
Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a
signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2
have been satisfied.

1.   **My Representations** .  I certify, represent to Lender and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and
        (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage
        payments now or in the near future;
   B.   I live in the Property as my principal residence, and the Property has not been condemned;
   C.   There has been no change in the ownership of the Property since I signed the Loan Documents;
   D.   I have provided documentation for **all** income that I receive (and I understand that I am not required to
        disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the
        Home Affordable Modification program ("Program"));
   E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this
        Agreement, including the documents and information regarding my eligibility for the Program, are true
        and correct;
   F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G.   I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

_____
1If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this
document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

✱✱✱See Attached letter ✱✱

███████████████████

1- MTG.
ORIGINAL

X

HAMP Agreement, 02/28/2012

LTR-692

2. **Acknowledgements and Preconditions to Modification.**   I understand and acknowledge that:

   A.   TIME IS OF THE ESSENCE under this Agreement;

   B.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.   In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   C.   I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.   I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.**   If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.   I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect.   The first modified payment will be due on 04/01/2013.

   A.   The new Maturity Date will be: 01/01/2038.

    B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan and less Principal in the amount of $1,123.05 which has been forgiven.   The new principal balance of my Note will be $258,868.43 (the "New Principal Balance").   I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement.   I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C.   Interest at the rate of 2.00000% will begin to accrue on the New Principal Balance as of 03/01/2013 and the first new monthly payment on the New Principal Balance will be due on 04/01/2013.   My payment schedule for the modified Loan is as follows:



047250A 00000302D 035CTXX p of 16

HAMP Agreement, 02/28/2012

LTR-602

X



C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.  Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement.  I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification

Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.  I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement.  (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC
Lender

_____(Seal)
Shannon Clark
Date  4/10/2013

By: _____
Date  5/24/13
        JEFF D. KOENIG

Account#: ██████████

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

LTR-602

X

State of _Colorado_

County of _Jefferson_

The foregoing instrument was acknowledged before me this 6/10/13 (date) _____ by _____ (name of person acknowledged) Shannon Clark.

My Commission Expires 12-01-2013. Witness my hand and official seal.

_Lisa Nelson_

Notary Public

Green Tree Servicing LLC
PO Box 6172
Rapid City, SD 57709
1-800-643-0202

relationships that work

# green tree

+ 0415735 000001393 046024 0061100 IEDL

SHANNON CLARK

█████████████████

February 06, 2013

███████████████████████████

Re:     Initial Escrow Account Disclosure Statement
        Account No.████████

Dear Shannon Clark:

Your monthly payment for the coming year will consist of the following:

| | |
|---|---|
| Principal and Interest | $1,265.87 |
| Escrow | $274.29 |
| Total Monthly Payment | $1,540.16 |

This is an estimate of activity in your escrow account during the coming year based on anticipated payments to be made from your account.



| | PAYMENTS TO ESCROW | | PAYMENTS FROM ESCROW | | | | ESCROW BALANCE | |
|---|---|---|---|---|---|---|---|---|
| Month | Projected | Actual | Projected | Description | Actual | Description | Projected | Required |
| | | | | | | Begin Bal | 1,498.83 | 2,194.36 |
| Jan 13 | 274.29 | .00 | .00 | | .00 | | 1,773.12 | 2,468.65 |
| Feb 13 | 274.29 | .00 | 1,025.26 | Tax | .00 | | 1,022.15 | 1,717.68 |
| Mar 13 | 274.29 | .00 | 1,241.00 | Hazard | .00 | | 55.44 | 750.97 |
| Apr 13 | 274.29 | .00 | .00 | | .00 | | 329.73 | 1,025.26 |
| May 13 | 274.29 | .00 | 1,025.26 | Tax | .00 | | 421.24- | 274.29 |
| Jun 13 | 274.29 | .00 | .00 | | .00 | | 146.95- | 548.58 |
| Jul 13 | 274.29 | .00 | .00 | | .00 | | 127.34 | 822.87 |
| Aug 13 | 274.29 | .00 | .00 | | .00 | | 401.63 | 1,097.16 |
| Sep 13 | 274.29 | .00 | .00 | | .00 | | 675.92 | 1,371.45 |
| Oct 13 | 274.29 | .00 | .00 | | .00 | | 950.21 | 1,645.74 |
| Nov 13 | 274.29 | .00 | .00 | | .00 | | 1,224.50 | 1,920.03 |
| Dec 13 | 274.29 | .00 | .00 | | .00 | | 1,498.79 | 2,194.32 |

PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATIONAL YEAR.

Cushion: $548.58

Under federal law, your lowest monthly balance should not fall below $548.58 or 1/6 of the anticipated payments from your escrow account, unless your mortgage documents or state law specifies a lower amount.  According to your mortgage documents or state law, your lowest monthly balance should not fall below $548.58.

# Exhibit G

Green Tree Servicing LLC
P.O. Box 6172
Rapid City, SD 57709-6172

+ 0438689 000000038 09GTXX - 0925874
SHANNON CLARK

COPY

#1

copy



# MAKING HOME AFFORDABLE ᴿᴹ

## HELPING YOU STAY IN YOUR HOME.

# HELPING YOU STAY IN YOUR HOME.



MAKING HOME AFFORDABLE

## relationships that work
# green tree

*You may be able to make your payments more affordable.*
*Act now to get the help you need!*

July 19, 2013

SHANNON CLARK

███████████████████

Green Tree Servicing LLC
P.O. Box 6172
Rapid City, SD 57709-6172

Re: Green Tree Servicing LLC ("Green Tree")
    Account Number:   ████████████
    Property Address:   ███████████████

Dear SHANNON CLARK:

**Congratulations!** You are eligible for a Home Affordable Modification. As previously described, if you comply with the terms of the Home Affordable Modification trial period plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage.

**How to Accept This Offer:**

## `STEP 1`  COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE

To accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by 08/18/2013. If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. We encourage you to make a copy of all documents for your records. If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

## `STEP 2`  CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME

Be certain to make any remaining trial period payments on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

Once your first mortgage is permanently modified under HAMP if you have a second mortgage on the same property, you may be eligible for a modification on your second mortgage under the Second Lien Modification Program ("2MP"). Please visit www.MakingHomeAffordable.gov/programs/second-mortgage-help/Pages/default.aspx to see if your second mortgage servicer is participating in 2MP. If your second mortgage servicer is participating, you should hear from them within 60 days. If not, please contact them directly to see if you are eligible for a modification.

We look forward to hearing from you no later than 08/18/2013.

Sincerely,

Green Tree
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages.  As part of this program, we — your mortgage servicer — and the Federal Government are working to offer you options to help you stay in your home.

Attachments: Summary of Your Modified Mortgage, Two copies of the Modification Agreement

**SUMMARY**          Here is a summary of your modified mortgage.

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on $1,123.05 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**PRINCIPAL FORGIVENESS.** To further reduce your mortgage payment, we will forgive a portion of your outstanding principal equal to $.00. You will never be required to repay this amount. However, there could be income tax consequences related to this forgiveness, and you should consult a tax advisor.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Green Tree will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Green Tree must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $278.86. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $274.29. You may pay this amount over a 5-year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.**

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES.** There are no fees or other charges for this modification.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth therein, including, but not limited to, the "My Representations" section are true and accurate. If you have any questions, please contact us at 1-800-643-0202.

Investor Loan #                    0

**After Recording Return To:**
Green Tree Servicing LLC
7360 South Kyrene Road,  T214
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I")1: SHANNON CLARK
Lender ("Lender"):  Green Tree Servicing LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):  08/09/2005
Loan Number: ████████
Property Address *[and Legal Description if recordation is necessary]* ("Property"):

████████████████

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations** .  I certify, represent to Lender and agree:

   A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B.  I live in the Property as my principal residence, and the Property has not been condemned;
   C.  There has been no change in the ownership of the Property since I signed the Loan Documents;
   D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
   E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

_____

1If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. TIME IS OF THE ESSENCE under this Agreement;

   B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 04/01/2013.

   A. The new Maturity Date will be: 03/01/2053.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan and less Principal in the amount of $.00 which has been forgiven. The new principal balance of my Note will be $259,991.48 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. $1,123.05 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $258,868.43. Interest at the rate of 3.87500% will begin to accrue on the Interest Bearing Principal Balance as of 03/01/2013 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 04/01/2013. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 3.875% | 03/01/2013 | $1,061.87 | $274.29 adjusts annually after year 1 | $1,336.16 adjusts annually after year 1 | 04/01/2013 | 480 |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G.  If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements.**  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed.  These items are called "Escrow Items."  I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.  Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents,  as the phrase "covenant and agreement" is used in the Loan Documents.  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds.  Lender and I can agree in writing, however, that interest shall be paid on the Funds.  Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification

Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.  I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC_____          _____(Seal)
Lender                                    Borrower

                                          _____
                                          Date

By:_____       _____(Seal)
                                          Borrower

_____          _____
Date                                      Date

                                          Account#: ███████████

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

# Group Exhibit H

# Exhibit H-1

**HELP FOR AMERICA'S ...OMEOWNERS.**



MAKING     AFFORDABLE

relationships that work

# green tree

Green Tree Servicing LLC
P.O. Box 6172
Rapid City, SD 57709-6172

Date of Notice: May 28, 2013

SHANNON CLARK
████████████████████



Re: Green Tree Servicing LLC ("Green Tree")
    Account Number:  ████████████████
    Property Address:  ███████████████████

Dear SHANNON CLARK:

As the Servicer of your Loan, we want to work with you to avoid foreclosure. That's why we are offering you the opportunity to qualify for a short sale or deed-in-lieu of foreclosure. You may be eligible for participation in the federal government's **Home Affordable Foreclosure Alternatives** (HAFA) Program, or you may be eligible for a short sale or deed-in-lieu of foreclosure under other programs we offer.

**Short Sale**
A short sale, also known as a pre-foreclosure sale, is the sale of a property for less than the balance remaining on the mortgage loan secured by the property. With a short sale, the mortgage lender agrees to release its mortgage lien on the property when it receives the proceeds of the sale of the property, even though the proceeds are less than the mortgage loan balance. Benefits to you may include:
- Avoiding foreclosure
- Satisfying the outstanding balance on your Loan
- Receiving a cash payment in the amount of $3,000 to use toward moving or other expenses

**Deed-in-Lieu of Foreclosure (DIL)**
With a DIL, you voluntarily transfer ownership of your property to your mortgage lender to satisfy your Loan. Benefits to you may include:
- Avoiding foreclosure
- Satisfying the outstanding balance on your Loan
- Receiving a cash payment in the amount of $3,000 to use toward moving or other expenses

If you are interested in a short sale or deed-in-lieu of foreclosure, complete the enclosed **Foreclosure Alternatives Assistance** form and return it back to us by 06/11/2013. You can use the enclosed envelope and return to 7360 South Kyrene Road, T214, Tempe, AZ 85283, or send via fax to (480) 383-0539 or contact us at 1-800-643-0202 to begin the process. *Note: there is no guarantee that you will qualify for a particular foreclosure alternative. Foreclosure proceedings will not be canceled or postponed while foreclosure alternatives are being considered.*

**Avoid Foreclosure—Respond Today**
Don't delay. To take advantage of this opportunity, you must act quickly. Please contact us today to begin the process. Additionally, you can also call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673) for assistance. They offer free HUD-certified counseling services in English and Spanish, and can help answer any questions you have.

Sincerely,


Green Tree




This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Green Tree Servicing LLC   ("Servicer")
SHANNON CLARK   ("Borrower")
10170 W BERRY DR   ("Property")
LITTLETON, CO  80127

893862714   ("Loan")

## FORECLOSURE ALTERNATIVES ASSISTANCE

**Please check the box(es) below if you are interested in a short sale or deed-in-lieu of foreclosure:**

[ ] Yes, I am interested in a short sale.

[ ] Yes, I am interested in a deed-in-lieu of foreclosure (DIL).

[ ] Yes, I am interested in a DIL and would like to be considered for a lease of the Property.



**Please contact me at** _____ **to discuss these foreclosure alternatives.**

_____   _____
Borrower Signature        Date     Co- Borrower Signature     Date

_____   _____
Printed Name                    Printed Name

**Please respond by 06/11/2013 by:**
- Returning the completed Foreclosure Alternatives Assistance form in the enclosed envelope at 7360 South Kyrene Road,  T214, Tempe, AZ 85283, or
- Faxing the completed Foreclosure Alternatives Assistance form to (480) 383-0539, or
- Contacting us at 1-800-643-0202.

If you would like to speak with a counselor about this program, call Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673) for assistance.  The Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish.  Other languages are available by appointment.

# Exhibit H-2

COLORADO
Land Home

Green Tree Servicing LLC
800-643-0202
9600 Center Ave. Suite 160
Rancho Cucamonga, CA 91730

relationships that work

# green tree

* 0432111 000002612 096C08 0057478
SHANNON CLARK

ᵖᵢ|||ᵇᵢ||ᵗᵢ||ᵖᵒ||ᵒᵈᵗᵖᵢ|||ᵇᵈᵗᵢ|||ᵗᵢᵖᵈ||ᵖᵗ||ᵗᵢᵖᵗ|

NOTICE OF DEFAULT
AND
RIGHT TO CURE DEFAULT

Date of Notice: 06/05/2013

Creditor: Green Tree Servicing LLC

Account No:



Brief identification of credit transaction: Loan Secured by Real Property

You are now in default on this credit transaction. You have the right to correct this default by 07/05/2013.

If you correct the default, you may continue with the contract as though you did not default.

**Your default consists of:** 12 payments past due (plus $0.00 in fees and charges) totaling $15,146.57.

**Cure of default:** You may cure your default on or before 07/05/2013 by paying $15,146.57, which consists of 15,146.57 for past due payments and $0.00 for late charges, or by doing the following: _____ NA _____.

You are advised, pursuant to C.R.S.§ 38-38-102.5 you may seek help by contacting the Colorado Foreclosure Hotline at 1-877-601-HOPE (1-877-601-4673). You may also call Green Tree Servicing LLC ("Green Tree") at 800-643-0202 and follow the automated system directions to speak with a loss mitigation representative.

**Creditors rights:** If you do not correct your default in the time allowed, the creditor may exercise its rights against you under the law by taking legal action to repossess or foreclose on its collateral.

If you fail to cure the total amount of your default by 07/05/2013, the maturity of this contract is automatically accelerated and full payment of the contract in the amount of $264,632.40 shall be due and payable without any further notice from the creditor. Additional expenses, interest and charges accrued after the date of this notice shall also be due and payable.

If you have any questions, write Green Tree at the above address or call the number provided.

If this default was caused by your failure to make a payment or payments, and you want to pay by mail, send a cashier's check or money order. Do not send cash. Other payment arrangements may be made by contacting Green Tree.

*This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.*

# Exhibit H-3

relationships that work

# green tree

Green Tree Servicing LLC
9600 Center Ave. Suite 160
Rancho Cucamonga, CA 91730

June 05, 2013

4 0432111 000003470 096C19 - 0069371
SHANNON CLARK
███████████████████



**Notification of Availability of Homeownership Counseling**

RE: Loan No: ████████
Servicer: **Green Tree Servicing LLC ("Green Tree")**
AMOUNT PAST DUE: $15,146.57
LATE FEES: $0.00

Dear Borrower:

Under Federal Law, you may be eligible for Homeownership Counseling. In an effort to assist you, Green Tree is required to notify you of your option to receive homeownership counseling. To be eligible for such counseling, you must be one who has a home loan:

· Secured by your principal residence; that is, a one family residence whether house, condominium, cooperative, or manufactured home and lot on which the house is situated;
· Not assisted under Title V of the Housing Act of 1949, i.e. farm loan; and.
· That you are unable to make payments or are expected to be unable to make payments, correct a home loan delinquency within a reasonable time, or resume full home loan payments due to a reduction in your employment, your self-employment, or income from pursuit of your occupation, or any similar loss of reduction experienced by any person who contributes to your income.

Green Tree does not offer homeownership counseling. However, such services are provided by non-profit organizations approved by the Secretary of the United States Department of Housing and Urban Development ("HUD") and experienced in the provision of Homeownership Counseling. You can obtain a list of HUD approved agencies in your area by calling toll-free 1-800-569-4287.

Our primary goal is to help you continue to experience the pride of homeownership. The longer you wait to contact us, the fewer options you will have available. If you provide Green Tree with some basic information as soon as possible, it may enable us to find a program or solution that best suits your needs.

In the event that you do not qualify for a home retention program or simply do not wish to retain your home, we can also assist in exploring all of the non-retention programs that are available to you.

You are not released from your obligation to Green Tree. You must still promptly resolve your loan default as described in the Notice of Default and Right to Cure to avoid further action by Green Tree.

While we offer a variety of resolutions for continuing homeownership, we also recommend that you seek guidance on all other debts from the Consumer Credit Counseling Service by calling (800) 643-0202.

Please gather all financial information related to your monthly income and expenses and contact our office. If you have any questions, please feel free to contact Green Tree at (800) 643-0202, Monday through Friday between the hours of 9 and 5 Mountain Time. You may also contact Green Tree in writing at the above-referenced address.

Sincerely,

Green Tree

cc: Customer File

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

## United States Department of Housing and Urban Development
## Servicemembers Civil Relief Act Notice

**Legal Rights and Protections Under the SCRA**

Servicemembers on "active duty" or "active service," or a dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-596) (SCRA).

**Who May Be Entitled to Legal Protections Under the SCRA?**

- Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard, and active service National Guard;
- Active servicemembers of the commissioned corps of the National Oceanic and Atmospheric Administration;
- Active servicemembers of the commissioned corps of the Public Health Service;
- United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Their spouses.

**What Legal Protections Are Servicemembers Entitled To Under the SCRA?**

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 percent during the period of military service, and for a one-year period following the end of the service member's military service.
- The SCRA states that, in a legal action to enforce a debt against real estate that is filed during, or within 9 months after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within 9 months after the servicemember's military service unless the creditor has obtained a court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

**How Does A Servicemember or Dependent Request Relief Under the SCRA?**

- In order to request relief under the SCRA, a servicemember or spouse, or both, must provide a written request to the lender, together with a copy of the servicemember's military orders. Send Green Tree requests to: PO Box 6172, Rapid City, SD 57709-6172.

**How Does a Servicemember or Dependent Obtain Information About the SCRA?**

- The U. S. Department of Defense's information resource is "Military One Source."
  Website: http://www.militaryonesource.com
  The toll-free telephone numbers for Military One Source are:
  o From the United States: 1-800-342-9647
  o From outside the United States (with applicable access code): 1-800-342-9647
  o International collect (through long distance operator): 1-484-530-5908
- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at:
  http://legalassistance.law.af.mil/content/locator.php.

# Exhibit H-4

relationships that work ...are

# green tree

June 17, 2013

SHANNON CLARK

███████████████

Green Tree Servicing LLC
P.O. Box 6172
Rapid City, SD 57709-6172
1-800-643-0202
Fax 1-866-870-9919
GTServicing.com

Re: Green Tree Servicing LLC ("Green Tree")
    Account Number: ████████
    Property Address: 10170 W BERRY DR
                 LITTLETON, CO 80127

Dear SHANNON CLARK:

You are receiving this notice because your mortgage is in default, and your property will be referred to foreclosure.

Green Tree services the mortgage account on your property located at the above-referenced address. You signed and executed a promissory note secured by a Mortgage or Deed of Trust ("the security instrument") in which you agreed to repay your debt at agreed upon terms. Because you have not fulfilled the terms of this agreement, Green Tree has the right and intends to initiate foreclosure action on the mortgaged property. The owner of your loan is: CWABS, Inc., Asset-Backed Certificates Trust 2005-AB4.

Green Tree is providing you an itemized account summary setting forth each of the following items, to the extent applicable:

1.   Account Status as of 06/17/2013:

- The total amount needed to reinstate or bring the account current is $15,146.57. Please note this amount is subject to change. Please call us for the most current amount.
- The amount of the principal obligation under the mortgage is $243,046.34.
- The date through which the account is paid is 06/01/2012.
- The date of the last full payment was 06/03/2013.
- The current interest rate in effect for the account is 6.25000%.
- The date on which the interest rate may next reset or adjust is Not Applicable.
- The amount of any prepayment fee (not included in the reinstatement amount) to be charged if any is Not Applicable.
- The amount of late payment fees included in the above reinstatement amount is $.00.

2.   Availability of Loss Mitigation Options:

Unless you have directed us not to contact you, Green Tree has made good faith efforts to contact you by telephone and/or mail to review your eligibility for alternatives to foreclosure. According to our records, with respect to this event of default:

- We have been unable to contact you or we have not yet received a complete initial package / borrower response package from you to consider you for a loan modification.
- You did not qualify for a loan modification, your most recent loan modification application has been denied, or you did not complete the trial plan for a loan modification.
- You have stated that you are not interested in pursuing an available loan modification or you have not accepted our loan modification offer.

3.   Borrowers Responsibilities:

- If you continue to occupy the property, you have the responsibility to maintain the property and an obligation to continue paying taxes owed until a sale or title transfer occurs.
- If you wish to surrender the property, you must contact Green Tree to discuss alternatives to foreclosure under which you may, if eligible, surrender the property to Green Tree in exchange for compensation.



# Exhibit H-5

relationships that work

# green tree

Green Tree Servicing LLC
P.O. Box 6172
Rapid City, SD 57709-6172

Date of Notice: June 19, 2013

SHANNON CLARK
███████████████████

Re: Green Tree Servicing LLC ("Green Tree")
    Account Number:
    Property Address: ████████████

Dear SHANNON CLARK.



Green Tree has not received a response from you regarding your opportunities for loss mitigation assistance. Our goal is to ensure that you have every opportunity to retain your home. However, in order for us to get started, we need additional information from you.

As of the date of this letter, we have undertaken the following loss mitigation efforts prior to foreclosure:

    National Homeownership Retention Program Home Affordable Modification Program

If your situation was caused by circumstances beyond your control which created a financial hardship, there may be alternatives available to you. Please contact us immediately to determine your eligibility for one of the following programs:

- Home Affordable Modification
- Forbearance
- Green Tree Account Workout
- Short Sale
- Deed-in-Lieu of Foreclosure.

The modification may involve some or all of the following changes to your mortgage account:

- Bringing your account current
- Reducing the interest rate on your account
- Extending the term of the account, and/or
- Delaying your repayment of a portion of the mortgage principal until the end of the account term.

You should have already received in the mail a form outlining the necessary documentation required to start the loss mitigation assistance process. Please gather all financial information related to your monthly income and expenses, and mail or fax the completed package and proof of income to:

    Green Tree Servicing LLC
    Attention: Loss Mitigation, T214
    7360 S. Kyrene Road
    Tempe, AZ 85283
    Fax: (480) 383-0539

If you need an additional form required to complete the package, or if you have any other questions, please contact us at 1-800-643-0202, Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST.

# Exhibit H-8

# HELP FOR AMERICA'S HOMEOWNERS.



MAKING                AFFORDABLE

relationships that work.

# green tree

You may be able to make your payments more affordable.
**Act now to get the help you need!**

P.O. Box 6172
Rapid City, SD 57709-6172
Tel 1-800-643-0202
GTServicing.com

Account #: ████████

July 17, 2013

Certified Mail Receipt No. 7106711216902603682

SHANNON CLARK
████████████████████

There is help available if you are having difficulty making your mortgage loan payments. You may be eligible for the Home Affordable Modification Program ("HAMP"), part of the initiative announced by President Obama to help homeowners.

**As your mortgage loan servicer, we will work with you in an effort to make your mortgage payment affordable. You will not pay any fees to take advantage of this opportunity to modify your mortgage loan payment and keep your home. Now is the time to act. We are ready to help you.**

**Here's how it works:** We will first determine if you are eligible based on your situation. To conduct this evaluation, we need you to submit an Initial Package consisting of a Request for Mortgage Assistance form (including all necessary certifications), an IRS Form 4506T-EZ or Form 4506-T, and documentary evidence of all income. You may obtain the Request for Mortgage Assistance form and the IRS Form 4506T-EZ or Form 4506-T from www.HMPadmin.com.

If the Initial Package is received later than 30 calendar days prior to the scheduled foreclosure sale date, the foreclosure sale will be suspended pending eligibility for HAMP. If you are eligible for HAMP, you will be required to complete a trial period plan. If you fail to make the required payments or if you are found ineligible for HAMP, we will proceed with the foreclosure sale.

If you are eligible, we will look at your monthly income and housing costs, including any past due payments, and then determine an affordable mortgage payment. Examples of the monthly income and additional documents you may be required to submit includes:

**For each borrower who receives a salary or hourly wage:**
- Copy of your two most recent pay stubs that show year-to-date earnings (not more than 90 days old at the time of submission).

**For each borrower who is self-employed:**
- Most recent quarterly or year-to-date profit/loss statement.

**For each borrower who has income such as Social Security, disability, or death benefits, pension, adoption assistance, public assistance or unemployment:**
- Copy of benefits statement or letter from the provider that states the amount, frequency and duration of the benefit, and
- Two most recent bank statements showing receipt of such payment.

**For each borrower who is relying on alimony, child support or separation maintenance as qualifying income\*:**
- Copy of divorce decree, separation agreement, other written agreement filed with the court, or decree that states the amount and period of time over which it will be received, and
- Two most recent bank statements showing receipt of such payment.
\*You are not required to disclose child support, alimony or separation maintenance income unless you choose to have it considered by Green Tree.

- Loan Modification – A modification is when the delinquent amounts are added back to the account balance and/or a temporary reduction in the interest rate to assist in bringing the account back to a current status.

- Short Sale – A short sale allows you to avoid foreclosure by selling your property and paying off your account. If you sell your property for less than the total amount owed on the account (subject to the terms of the offer), we will accept that amount as full satisfaction of your loan. Taking this action will not save your home, but Green Tree may pay you cash upon completion of the sale of your home.

- HAFA Short Sale – If you are unable to afford your first mortgage and want to sell your home, a short sale under the Home Affordable Foreclosure Alternatives Program ("HAFA") is specifically designed to help you avoid foreclosure even if the sale price may not pay off the amount owed on the mortgage. A short sale requires a number of parties (you, the buyer, your real estate broker and sometimes mortgage insurance companies and other lenders) to work together to make this option successful. However, it could be a good solution for your current situation.

- Deed-In-Lieu of Foreclosure – A deed-in-lieu of foreclosure would allow you to voluntarily deed your property to Green Tree in order to satisfy the account. Taking this action will not save your home, but Green Tree may pay you cash upon completion of the Program.

- HAFA Deed-In-Lieu of Foreclosure – If you are unable to afford your first mortgage, a deed-in-lieu of foreclosure under the Home Affordable Foreclosure Alternatives Program ("HAFA") is specifically designed to help you avoid foreclosure. You voluntarily transfer ownership of your home and all real property secured by your mortgage loan (property) to Green Tree to satisfy the total amount due on the first mortgage.

- Deed-for-Lease Program – A program designed to minimize family displacement, deterioration of neighborhoods caused by vandalism and theft to vacant homes, and the effect these have on families, communities and home price stabilization. Deed-for-Lease Program allows qualifying borrowers of properties transferred through deed-in-lieu of foreclosure (DIL) to remain in their home and community by executing a lease of up to 12 months in conjunction with a DIL.

- Forbearance – A forbearance is when the lender delays its right to exercise foreclosure if the borrower can catch up to his payment schedule in a certain time.

Green Tree may pay you cash to sell or vacate your home. If you complete all the requirements of the program, including either our short sale or deed-in-lieu transaction documents, you may be paid a one-time only cash payment upon completion of the program. The program details, any information/documentation required and the amount of money we may be able to pay you upon completion of the program will be discussed when you contact Green Tree.

Our primary goal is to help you continue to experience the pride of homeownership. The longer you wait to contact us, the fewer options you will have. If you provide Green Tree with the information as soon as possible, it will help us find a solution that best fits your needs.

While we offer a variety of resolutions for continuing homeownership, we also recommend you seek guidance on all other debts from the Consumer Credit Counseling Services by contacting 1-866-857-3092.

## STEP 2   CONTACT US

We want to make modifying your mortgage loan as easy as possible. However, you must take the first step by contacting us at 1-877-631-0572. You may also write to us at the address at the bottom of this letter. Be sure to include the above-referenced information.

Green Tree Servicing LLC
Attention: Loss Mitigation,T214
7360 South Kyrene Road
Tempe, AZ 85283
Fax: 1-877-371-5404

Please gather all financial information related to your monthly income and expenses and contact our office.

Counseling is available at no charge from HUD-approved counselors through the HOPE Hotline: 1-888-995-HOPE. This housing counseling on-demand service is available 24-hours a day/7-days a week in Spanish and English (other languages available on request). You may also visit http://www.hud.gov/offices/hsg/sfh/hcc/fc/.

# Exhibit I

# green tree

September 20, 2013

Green Tree Servicing LLC
PO Box 6172
Mailstop R299
Rapid City, SD 57709-6172
1-855-858-3873
Fax 1-855-895-4481
HAMPDisputes@GreenTreeCreditSolutions.com

SHANNON CLARK

██████████████

Account #: ████████████
Case Reference #: Casemgmt- 809

Dear Shannon Clark,

Green Tree Servicing LLC ("Green Tree") has completed a review of the above-referenced inquiry or dispute case number.  Green Tree has determined the following:

Green Tree Servicing LLC received your correspondence regarding continued participation in the Home Affordable Modification Program (HAMP).  Green Tree is pleased to have the opportunity to respond and we appreciate you contacting us to discuss your concerns.  As you are aware, an error was detected on the modification agreement sent on March 20, 2013. A revised modification agreement was provided to you on July 19, 2013 to correct the terms and conditions of the plan.  The previous agreement executed by Borrower and Lender are void and of no legal effect.  If you elect not to sign the corrected agreement, the terms of your original loan documents shall continue and you will not be eligible for a modification under the HAMP. *Reference Section 4 (Additional Agreements) Paragraph K of the Modification Agreement.*  If you have any questions regarding this decision, contact your account representative Audelia E. at 1-800-643-0202 extension 61734.

If you have any additional questions, please call us toll-free at 1-855-858-3873, Monday – Friday 8 a.m. to 4 p.m. MST.

Respectfully,

Green Tree

/smk/46/s

*This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.*

LTR-641

# Exhibit J



**GREEN TREE**   #
POB 6172
RAPID CITY, SD 55709
(800) 643-0202

| | |
|---|---|
| Date Opened: | 08/09/2005 |
| Responsibility: | Individual Account |
| Account Type: | Mortgage Account |

Loan Type: CONVENTIONAL REAL
ESTATE MORTGAGE
Date Updated: 08/08/2013
Last Payment Made: 08/06/2013

Pay Status: >Account 120 Days Past Due<

Terms: $1,265 per month, paid
Monthly for 360 months

High Balance: High balance of $234,180 from 09/2012 to 03/2013; $239,991 from 04/2013 to 04/2013; $234,180 from 05/2013 to 07/2013
Estimated month and year that this item will be removed: 08/2019

| | 07/2013 | 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $243,046 | $243,046 | $243,046 | $258,196 | $243,046 | $243,046 | $243,046 | $243,046 | $243,046 | $243,046 | $243,046 |
| Amount Due | $1,265 | $1,265 | $1,265 | $1,102 | $1,265 | $1,265 | $1,265 | $1,265 | $1,265 | $1,265 | $1,265 |
| Past Due | $16,445 | $13,915 | $13,752 | $0 | $11,385 | $11,385 | $11,385 | $10,120 | $8,855 | $7,590 | |
| Remarks | | | | | PPA | PPA | PPA | PPA | >PPI< | >PPI< | >PPI< |
| Rating | | | | OK | 120 | 120 | 120 | 120 | 120 | 120 | 120 |

| | 09/2012 |
|---|---|
| Balance | $243,046 |
| Amount Due | $1,265 |
| Past Due | $6,325 |
| Rating | 120 |

>Maximum Delinquency of 120 days in 09/2012
for $6,325 and in 07/2013 for $16,445<

TransUnion

**GREEN TREE SERVICING**
Address:                            Account Number:
332 MINNESOTA ST STE 610    ▮▮▮▮▮▮
SAINT PAUL, MN 55101
(855) 812-1402
Address Identification Number:
0153051438
Status:  Open. $16,445 past due as of Jul 2013.                    Status Details:  By Feb 2020, this account is scheduled to go
                                                                   to a positive status.

| | | |
|---|---|---|
| Date Opened:<br>08/2005 | Type:<br>Mortgage | Credit Limit/Original Amount:<br>$234,180 |
| Reported Since:<br>09/2012 | Terms:<br>2 Years | High Balance:<br>NA |
| Date of Status:<br>05/2013 | Monthly Payment:<br>$1,265 | Recent Balance:<br>$243,046 as of 07/2013 |
| Last Reported:<br>07/2013 | Responsibility:<br>Individual | Recent Payment:<br>$0 |

Payment History:

| 2013 | | | | | | | 2012 | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP |
| 180 | 180 | 180 | OK | FS | FS | FS | FS | FS | FS | 150 |

Account History:
Foreclosure proceedings started as of Oct 2012 to Mar 2013
180 days past due as of May 2013 to Jul 2013
150 days past due as of Sep 2012

Balance History - The following data will appear in the following format:
*account balance / date payment received / scheduled payment amount / actual amount paid*
Jun 2013: $243,046 / June 3, 2013 / $1,265 / no data
May 2013: $243,046 / May 28, 2013 / $1,265 / no data
Apr 2013: $258,196 / April 26, 2013 / $1,102 / no data
Mar 2013: $243,046 / March 14, 2013 / $1,265 / no data
Feb 2013: $243,046 / February 14, 2013 / $1,265 / no data
Jan 2013: $243,046 / April 30, 2012 / $1,265 / no data
Dec 2012: $243,046 / April 30, 2012 / $1,265 / no data
Nov 2012: $243,046 / April 30, 2012 / $1,265 / no data
Oct 2012: $243,046 / April 30, 2012 / $1,265 / no data
Sep 2012: $243,046 / April 30, 2012 / $1,265 / no data

The original amount of this account was $234,180