**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Philip A. Brimmer**

Civil Action No.:   ___13-cv-2646_____

**SHANNON CLARK**, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

**GREEN TREE SERVICING LLC**, a Delaware limited liability company,

     Defendant.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS (Dkt. 9)**

---

**I.      INTRODUCTION**

     This putative class action challenges Defendant Green Tree Servicing LLC's deficient, unfair, and fraudulent loan servicing practices and habitual failure to honor Trial Period Plans ("TPPs") and Permanent Modification Agreements ("PMAs") under the Federal Home Affordable Modification Program ("HAMP"). Operating primarily as a loan servicer, over the past several years Green Tree has acquired the mortgage servicing rights ("MSRs") to billions of dollars worth of loans. Unfortunately for borrowers whose MSRs were acquired by Green Tree, it has largely mishandled the loan servicing process, violating federal, state, and common law and causing distressed homeowners to face the ongoing threat of wrongful foreclosure.

     As explained in detail below, Green Tree's Motion to Dismiss ignores prevailing case law related to HAMP modifications and the contractual rights attendant to TPPs and PMAs. Green Tree also provides no authority to support dismissal of Clark's federal law claims. This

1

Court should deny Green Tree's Motion to Dismiss, or in the alternative, grant Plaintiff leave to amend her pleadings.

## II.      STATEMENT OF THE FACTS

Plaintiff Shannon Clark experienced financial difficulty during 2012 and applied for a loan modification through HAMP. (Compl. ¶ 29.) At that time Bank of America ("BAC") serviced her loan. On September 14, 2012, BAC sent Clark a HAMP TPP ("First TPP"), which promised that if she made her payments and otherwise complied with the TPP the lender would send her a permanent modification agreement for her signature. (*Id.* ¶ 14, Ex. B.) The First TPP was electronically signed by a BAC representative. (*Id.*)

Shortly thereafter, on September 16, 2012, the servicing for Clark's loan was transferred to Green Tree. (*Id.* ¶ 30.) Clark contacted Green Tree to inquire about where to make her first trial payment under the First TPP. (*Id.* ¶¶ 38-39.) Green Tree told Clark it had no record of the First TPP, which had been approved by BAC, and that if Clark wanted to obtain a HAMP modification she would have to start the whole process over. (*Id.* ¶¶ 39-41.) Clark re-applied for a HAMP modification, after which she received another TPP ("Second TPP") that contained materially worse terms than her First TPP. (*Id.* ¶¶ 43-44.) Regardless, Clark complied with the Second TPP and made all of her trial payments. (*Id.* ¶ 45.)

Green Tree then sent Clark a permanent modification for her signature ("First PMA"). (*Id.* ¶ 46.) Clark complied with the First PMA by signing two copies before a notary, returning those copies to Green Tree, and keeping her representations true and correct. (*Id.* ¶ 47.) A Green Tree representative in turn signed the First PMA, which was recorded on May 6, 2013. (*Id.*) In conjunction with her signed PMA, Clark sent a letter explaining that she believed Green Tree

had made mistakes calculating her income, although she had provided all income documentation in full compliance with the TPPs and PMA. (*Id.* ¶ 48.) Green Tree responded by confirming that her income had been calculated correctly. (*Id.* ¶ 49.)

On July 19, 2013, more than two months after her First PMA was recorded, Green Tree sent Clark another PMA ("Second PMA") containing materially worse terms than her First PMA. (*Id.* ¶¶ 50, 51.) When Clark asked for an explanation regarding why her First PMA wasn't being honored, and why she was sent a Second PMA, Green Tree responded that it had made 'mistakes' by sending out the wrong PMAs to 'lots' of people. (*Id.* ¶ 59.) Green Tree said Clark's loan would be referred to foreclosure if she refused to sign the Second PMA. (*Id.* ¶ 55.)

## III.    ARGUMENT

"In construing the motion to dismiss, the court must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Arthur v. Liberty Mut. Fire Ins. Co.*, No. 05CV00680, 2005 WL 3078842 (D. Colo. Nov. 16, 2005) (quotations omitted.) While federal pleading standards require more than "formulaic recitation of the elements," a complaint survives dismissal where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### A.    Plaintiff Alleged A Violation Of The ECOA Because She Was Current On Her Loan When Green Tree Took Adverse Action Against Her.

Green Tree first argues Plaintiff failed to state a claim under the Equal Credit Opportunity Act ("ECOA") because she was in default when the adverse action occurred and because Green Tree is not a "creditor" as defined by the ECOA. (*See* Mot. 3-4.) Green Tree is mistaken on both fronts.

3

First, Clark was not in default when Green Tree took adverse action against her. Clark applied for a modification because she experienced a financial hardship. (Compl. ¶ 29.) After making trial payments, Clark entered the First PMA where she truthfully attested she was in default. (*Id.* ¶ 47.) Green Tree then recorded and implemented her First PMA, which capitalized past due amounts and brought Clark's loan current. (*Id.*, Ex. E); (*see* HAMP Supplemental Directive 09-01 at 8-9, 18.) Clark's credit bureau report confirms Green Tree reported Clark as "current" during April 2013. (*Id.* ¶ 62.) Thus, Clark "was current on her loan as of April 2013, after which Green Tree took adverse action against her." (*Id.* ¶ 185.)

Second, as a loan servicer Green Tree falls squarely within the definition of "creditor". The ECOA defines "creditor" as "any person who regularly extends, renews, or continues credit; [or] any person who regularly arranges for the extension, renewal, or continuation of credit . . . ." 15 U.S.C. § 1691a(e). The definition "includes those who make the decision to deny or extend credit, as well as those who negotiate and set the terms of the credit with the consumer." 68 Fed. Reg. 13144-01 (2003). Beyond citing a single case that held to the contrary[1], Green Tree offers no explanation as to why servicers aren't creditors. Green Tree underwrites HAMP applications, monitors performance under trial plans, and determines whether to provide offers for permanent modification—all of which show Green Tree "regularly arranges" the extension or continuation of credit. *See Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortgage Loan Trust, Series 2003-1*, 787 F. Supp. 2d 747, 757 (N.D. Ill. 2011) (allowing ECOA claim against mortgage holder and

---

[1] Respectfully, *Wenglicki v. Tribeca Lending Corp.*, No. 07-cv-4522, 2009 WL 2195221 (E.D. Pa. July 22, 2009) was incorrectly decided. The court found servicers aren't creditors because the plaintiff failed to even allege in his complaint or argue in his opposition to the motion to dismiss that defendant was a creditor under the Act. (*See Wenglicki* Dkts. 37, 41.)

loan servicer); *Stith v.* Thorne, No. 3:06-cv-00240, 2006 WL 5444366, at *5 (E.D.Va. Oct. 30, 2006) (broker who "played an active role at all stages of the transaction" qualified as creditor).

Accordingly, this Court should find that Clark has stated a claim under the ECOA.

**B.    Plaintiff Can Properly State A FCRA Claim Under 15 U.S.C. § 1681s-2(b), Which Provides A Private Right Of Action.**

Green Tree next argues Clark cannot seek relief based on Green Tree's violation of 15 U.S.C. § 1681s-2(a). While 15 U.S.C. § 1681s-2(a) does not provide a private right of action, Plaintiff respectfully requests leave to amend her complaint to clarify that she intends to state a claim based on Defendant's failure to comply with 15 U.S.C. § 1681s-2(b).

"[P]rivate rights of action are allowable under § 1681s-2(b) for claims against furnishers of information, who have received notice from a CRA regarding a dispute and continue to report an account as delinquent without conducting a reasonable investigation." *Stich v. BAC Home Loans Servicing, LP*, No. 10-CV-01106, 2011 WL 1135456, at *4 n.8 (D. Colo. Mar. 29, 2011). Plaintiff has already pled facts to support a violation of § 1681s-2(b). Clark pleaded that she "submitted a formal dispute to the credit bureaus" regarding Green Tree's incorrect reporting of her mortgage loan and that, to-date, Green Tree is yet to correct its furnishing of inaccurate information to the credit bureaus. (*See* Compl. ¶ 204.) Thus, Clark already alleges facts to support a § 1681s-2(b) violation and respectfully requests that the Court grant her leave to do so.

**C.    Plaintiff States A Claim Under The FDCPA Based On Green Tree's Failure To Send A Proper Validation Notice.**

Next, Green Tree argues Clark failed to state a Fair Debt Collection Practices Act ("FDCPA") claim because Green Tree never sent a qualifying "initial communication" and because supposedly it was the second "debt collector." (Mot. 5-7.) Both arguments fail.

First, regardless of whether the September 27, 2012 letter is an initial communication in connection with the collection of a debt, the October 1, 2012 letter is a deficient Validation Notice. The October 1, 2012 letter was undoubtedly sent in connection with the collection of a debt—it informs Clark that she owes $253,090.90 and that unless disputed, the amount owed will be assumed valid. (Compl., Ex. M); *Parker v. Midland Credit Mgmt., Inc.*, 874 F. Supp. 2d 1353, 1357 (M.D. Fla. 2012) (letter sent in connection with collection of a debt if it "demand[s] payment or discuss[es] specifics of the underlying debt"). Further, the FDCPA contemplates that a debt collector may comply with the FDCPA by including the validation disclosures in its initial communication. *See* FDCPA § 809(a) ("debt collector shall, unless the following information is contained in the initial communication . . . send the consumer a written notice containing" certain validation disclosures). The letter also contains the specific disclosures required by FDCPA § 809(a)(3), (4), and (5) and states it is being sent to "inform [Clark] of the following important notice regarding your rights under federal law." (Ex. M.) Therefore, any attempt by Green Tree to claim that the letter is not actually a Validation Notice under the FDCPA lacks credibility.[2]

Second, Green Tree is not the "***second*** debt collector." 'Debt collector' under the FDCPA only includes servicers who, as with Green Tree, acquire the MSRs to a loan that is already in default. *See Garrett v. BNC Mortgage, Inc.*, 929 F. Supp. 2d 1120, 1125-26 (D. Colo. 2013) (citing *Solomon v. HSBC Mortg. Corp.,* 395 Fed.Appx. 494, 495 (10th Cir. 2010)). BAC did not fall within the definition of debt collector—and was not required to send a Validation Notice— because Clark's loan was not in default when BAC began servicing the loan. (*See* Compl. ¶ 29) (alleging Clark didn't begin to experience trouble with her loan until 2012). However, Clark was

---

[2] If necessary, Clark can readily allege that she did not receive any subsequent letters from Green Tree that would even purport to satisfy the Validation Notice requirement under FDCPA § 809.

in default when Green Tree acquired the MSRs for her loan. (*Id.* ¶ 78.) Accordingly, as the first

debt collector Green Tree was required, but failed, to send a compliant Validation Notice.

      **D.**     **Plaintiff's State Law Claims Are Not An Improper "End Run" Around Lack
Of Private Right Of Action Under HAMP.**

      Green Tree next argues Clark's state law claims are an improper attempt to fabricate a

cause of action under HAMP and are barred because borrowers aren't entitled to a permanent

HAMP modification. (Mot. 7-9.) Green Tree's arguments and authorities are outdated,

misconstrue the issues, and ignore prevailing case law.

      While HAMP does not grant a private right of action, Clark's state law claims are not an

improper attempt to enforce HAMP guidelines. In what is perhaps the seminal authority on

HAMP, the Seventh Circuit addressed Green Tree's argument and held that state law remedies

are <u>not</u> preempted by HAMP and that HAMP presents <u>no</u> barrier to the enforcement of state

laws. *See Wigod v. Wells Fargo*, 673 F.3d 547 (7th Cir. 2012). In *Wigod*, a borrower complied

with a HAMP TPP but did not receive an offer for permanent modification. The court found the

TPP could properly form the basis of claims for breach of contract, promissory estoppel, and

fraud. *Id.* 581-585. *Wigod* has since been cited more than 200 times in state and federal courts,

and adopted by courts across the country. *See, e.g., Corvello v. Wells Fargo Bank, NA*, 728 F.3d

878, 880 (9th Cir. 2013), as amended on reh'g in part (Sept. 23, 2013); *Spaulding v. Wells Fargo

Bank, N.A.*, 714 F.3d 769, 776 (4th Cir. 2013); *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D.

533, 553 (N.D. Cal. 2012) (collecting authorities); *see also Dawson v. Litton Loan Servicing, LP*,

No. 12-CV-01334, 2013 WL 1283848 (D. Colo. Mar. 28, 2013) (plaintiffs stated CCPA and

tortious interference claims associated with their attempt to obtain a HAMP modification).

Further, Green Tree ignores prevailing case law in arguing borrowers cannot state a breach of TPP or PMA claim because borrowers supposedly aren't owned a permanent modification.[3]  This misses the point. Borrowers are owed an *offer* for a permanent modification (by receiving a HAMP PMA for their signature) if they satisfy the conditions set forth in the TPP and may state a breach of contract claim if the lender fails to provide such an *offer. See, e.g., Corvello v. Wells Fargo Bank, NA*, 728 F.3d at 884; *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 235 (1st Cir. 2013)*; Wigod*, 673 F.3d at 565; *West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 297 (Cal. Ct. App. 2013) (collecting authorities). Moreover, borrowers are undoubtedly owed a permanent modification under an executed PMA if they comply with the contract's terms and conditions. *See, e.g., Singh v. Wells Fargo Bank*, No. 1:10-CV-1659, 2012 WL 691705, at *4 (E.D. Cal. Mar. 2, 2012) (allowing breach of contract based on lender's failure to permanently modify loan even where lender didn't provide signed copy of PMA); (*see* Ex. F) (stating that if borrower's representations continue to be true, then the Agreement will "amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage").

Accordingly, this Court should find that Plaintiff may allege state law claims and that her state law claims are not merely an improper attempt to enforce HAMP guidelines.

---

[3] Green Tree disingenuously directs the Court to six pre-*Wigod* opinions, three of which cite the *Wigod* district court opinion that was overturned by the Seventh Circuit. *See Stolba v. Wells Fargo & Co.*, No. 10-CV-6014, 2011 WL 3444078 (D.N.J. Aug. 8, 2011); *Bourdelais v. J.P. Morgan Chase*, No. 3:10-CV-670, 2011 WL 1306311, at *4 (E.D. Va. Apr. 1, 2011); *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1356 (S.D. Fla. 2011). And the one post-*Wigod* opinion cited by Green Tree merely shows borrowers cannot use state law claims to enforce HAMP guidelines. *See Miller v. Chase Home Fin. LLC*, 677 F.3d 1113, 1115-17 (11th Cir. 2012) (borrower improperly claimed bank "failed to comply with its obligations under [HAMP] by declining to issue him a permanent loan modification."). Green Tree's silence with respect to *Wigod* and its progeny speaks volumes.

**E.    Plaintiff's Claims Are Not Barred By The Statute Of Frauds Because The TPP Was Signed And Does Not Qualify As A Credit Agreement.**

Green Tree next argues Clark's TPP claims are barred by the Colorado statute of frauds because the supposedly "unsigned" First TPP contains "the alleged promise . . . that Green Tree would permanently modify the Loan if Clark timely made reduced trial payments."[4] (Mot. 9-11.) Green Tree is incorrect for two reasons: (1) the First TPP was electronically signed by a Green Tree representative, and (2) even if it wasn't, the First TPP does not fall within the scope of the Colorado statute of frauds.

The Colorado Credit Agreement Statute of Frauds provides that "no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought." C.R.S. § 38–10–124. Credit agreement is defined as "a contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation." *Id.* The term "credit agreement" also includes "a purported agreement, negotiation, representation, or promise that assertedly amends, cancels, or waives any terms or provisions of a previous credit agreement." *Norwest Bank Lakewood, Nat. Ass'n v. GCC P'ship*, 886 P.2d 299, 302 (Colo. Ct. App. 1994).

First, Clark's claims are not barred by the statute of frauds because the First TPP was electronically signed by Christina Sherman, Home Loan Team, Bank of America, N.A. (*See* Ex. B.) This Court has held that such an electronic signature satisfies the statute of frauds. *See*

---

[4] Notably, this argument completely contradicts Green Tree's prior argument claiming the TPP does not entitle borrowers to a permanent modification. (*See* Mot. 8.)

*Kaufman v. Am. Family Mut. Ins. Co.*, No. 05-CV-02311, 2007 WL 437641, at *2 (D. Colo. Feb. 5, 2007) (Claim is not barred by the statute of frauds because "[e]ven if the letter were considered to fall within the statute of frauds, it is undisputed that the purported agreement is in writing and contains an electronic signature of a representative of American Family.").

Second, regardless of the signature, the First TPP is not a "credit agreement" because Green Tree does not promise or undertake to lend money or amend an existing credit agreement. *See* C.R.S. § 38–10–124(2). While Green Tree self-servingly asserts that the First TPP contains an "alleged promise" that "Green Tree would permanently modify the Loan if Clark timely made the reduced trial payments," Green Tree does not point to any contractual language that purports to make such a promise, nor any allegation that such a promise was made. (Mot. 10.) In reality, the Parties' execution of a "modification agreement"—i.e. a credit agreement—is an intervening precondition to receiving any permanent modification. (*See* Ex. B.) ("If you successfully made each of the payments above by their due dates, you have submitted two copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified . . . ."). It is that agreement—i.e. the modification agreement—that qualifies as a "credit agreement" because it "amends" the "terms or provisions of a previous credit agreement," not the TPP which merely states that the loan will be modified if the credit agreement is executed. *See Norwest*, 886 P.2d at 302. This is supported by the express language of the TPP, which states that it does not modify Clark's loan or otherwise extend credit:

> You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

(Ex. B, Additional Trial Period Plan Information and Legal Notices.)[5]

Accordingly, this Court should find Clark's claims are not barred by the statute of frauds.

**F.      Clark Alleges Fraudulent Misrepresentation Based On Green Tree's Reckless Disregard For The Truth Of Statements Made To Clark.**

Green Tree next argues Clark failed to state a claim for fraudulent misrepresentation because she fails to allege Green Tree "had knowledge" of the alleged misrepresentations. (Mot. 11-12.) However, as Green Tree's own authority confirms, fraudulent misrepresentation may be established by showing either actual knowledge or reckless disregard for the truth of the statements made. *See O'Neill v. California Farms, Inc.*, No. 12-CV-00676, 2013 WL 5467074 (D. Colo. Sept. 30, 2013) (dismissing fraudulent misrepresentation claims where plaintiff failed to allege that defendants "knew or recklessly disregarded the truth of the statements"); *see also O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 900 (10th Cir. 1992) ("reckless disregard of the truth or falsity of a statement is sufficient to allege fraud"). Accordingly, Green Tree is mistaken in asserting that Clark must plead actual knowledge—reckless disregard or ignorance of the truth is sufficient to plead fraudulent misrepresentation.

Clark satisfies this standard. Plaintiff alleges Green Tree falsely informed her that it had no record of her participation in the HAMP, that it did not have any of her documentation related to the HAMP, and that it had no records of Clark having been approved by BAC for a Trial Plan. (Compl. ¶ 96.) Clark also alleges that during a follow-up call, Green Tree falsely informed her

---

[5] Green Tree's authorities are inapposite. In *Hewitt v. Pitkin Cnty. Bank & Trust Co.*, 931 P.2d 456 (Colo. Ct. App. 1995) the plaintiff sought to enforce an oral modification agreement, not a written trial plan. Likewise, in *Pool v. Wells Fargo Bank, N.A.*, No. 11-CV-01066, 2012 WL 3264294 (D. Colo. Aug. 10, 2012) the trial plan at issue differed substantially in form and substance from the TPP here, (*see Pool* Dkt. 11-1), and the plaintiff failed to even raise the question as to whether the TPP fell under the statute of frauds. *Pool*, 2012 WL 3264294, at *2.

that the only way for her to participate in the HAMP was for her to start the entire process over. (*Id.* ¶ 97.) In doing so, Clark alleges that Green Tree failed conduct any investigation into the status of her HAMP TPP and miscommunicated crucial information, forcing her to start the trial process all over by going through an eligibility interview, completing a new HAMP application, and sending new financial documents to Green Tree. (*Id.* ¶¶ 98, 100.)

Accordingly, this Court should find that Clark has stated a claim for fraudulent misrepresentation based on Green Tree's reckless disregard to the truth of its representations.

### G.   Plaintiff Adequately States Claims For Breach Of The First TPP And Breach Of The First PMA.

Green Tree next argues Plaintiff failed to state a claim for breach of the First TPP because the First TPP does not "unconditionally" require Green Tree to offer Clark a permanent modification. (Mot. 13.) Green Tree further argues Clark's breach of contract claims fail for lack of consideration because "the monies due under the First TPP and the First PMA were also payable under the Loan documents." (*Id.* 14.) Green Tree is mistaken.

#### 1.   The First TPP is an enforceable conditional contract.

To state a claim for breach of contract, a plaintiff must plead: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *PayoutOne v. Coral Mortgage Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009). Consideration means "a benefit received or something given up as agreed upon between the parties." *Wingerter v. Gerber*, No. 09-CV-02000-PAB-MEH, 2011 WL 1135204, at *3 (D. Colo. Mar. 29, 2011) (quotation omitted.) "A benefit to the promisor or a detriment to the promisee, however slight, can constitute consideration." *Id.* (quotation omitted.)

That the First TPP contains a conditional offer does not mean that a contract has not been formed. Green Tree relies on the paragraph in the First TPP stating: "If you successfully make all of your Trial Plan Payments, and return any additional documents that may be required, you may receive a Modification Agreement . . . that must be signed, notarized and returned to us," (*see* Ex. B at 1) to supposedly show the First TPP is not an enforceable contract. Faced with a similar argument in *Gaudin v. Saxon Mortgage Servs., Inc.*, No. C 11-1663, 2011 WL 5825144 (N.D. Cal. Nov. 17, 2011) the court explained:

> Read literally, this language would suggest that even if all other conditions are satisfied, a lender has no obligation to provide a loan modification agreement unless it in fact provides a modification agreement . . . this provision conflicts with the clear tenor of the remainder of the document and would render the other agreement promises illusory. At least at the pleading stage, a reasonable inference can be drawn that the language was merely intended to reemphasize to borrowers that their underlying loan agreements cannot and will not be deemed modified or no longer enforceable until and unless final modification agreements are fully executed. While the provision admittedly gives rise to an ambiguity, it does not permit a determination as a matter of law that the lender has unbridled discretion as to whether or not it will provide an executed copy of a modification agreement upon satisfaction of all other conditions of the TPP.

*Id.* at *4; *see also Wigod*, 673 F.3d at 563 (rejecting defendant's argument whereby it could simply refuse to send a PMA "for any reason whatsoever," noting that defendant's interpretation would turn "an otherwise straightforward offer into an illusion")[6]. Here, as in *Gaudin* and *Wigod*,

---

[6] In *Wigod* the court also addressed the lender's argument that because a TPP is conditional it is not a valid and enforceable agreement noting:

> That is not a reasonable reading of the TPP. Certainly, when the promisor conditions a promise on *his own* future action or approval, there is no binding offer. But when the promise is conditioned on the performance of some act *by the promisee* or a third party, there can be a valid offer.

673 F.3d at 561-62.

Green Tree's interpretation would render the other agreement promises illusory. For example, the First TPP promises:

> Once you have successfully made each of the payments above by their due dates, you have submitted two signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement.

(*See* Ex. B at 1.) This promise would be rendered illusory if it were left to Green Tree's unbridled discretion whether to send her a PMA for her signature. Further, that the First TPP falls within the rubric of HAMP establishes that Green Tree must comply in good faith with HAMP guidelines in determining whether to provide Clark with a PMA for her signature. *See Alimena v. Vericrest Fin., Inc.*, No. CIV. S-12-0901, 2013 WL 4049663, at *13-14 (E.D. Cal. Aug. 9, 2013) (in determining whether to provide PMA lender was required to "comply with HAMP guidelines" and act in "good faith"). Therefore, the parties have entered into an agreement regardless of whether the TPP contains conditions that must be satisfied in order for Clark to receive a PMA.[7]

**2.    Clark pleads consideration to support her breach of contract claims.**

Green Tree is also incorrect in asserting that Clark's breach of First TPP and breach of First PMA claims fail for lack of consideration. As an initial matter, "[t]he Colorado Supreme Court has rejected the notion that a complaint alleging breach of contract must necessarily recite

---

[7] Green Tree's authorities again fail to support its argument. In *Bohnhoff v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 849 (D. Minn. 2012) the plaintiff incorrectly argued the TPP is "a contract to modify the Note," *Id.* at 854, which the court properly rejected. *See also Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1209 (D. Or. 2011) (improperly alleging breach of TPP "when the defendant failed to modify the plaintiff's mortgage"). Likewise, in *Wittkowski v. PNC Mortgage*, No. 11-cv-1602, 2011 WL 5838517 (D. Minn. Nov. 18, 2011) the breach of contract claim failed because plaintiff failed to allege she satisfied the conditions in the TPP. *Id.* at *3. Here, Green Tree does not contest that Clark has alleged she satisfied all conditions in the First TPP.

the consideration securing that agreement or else face dismissal." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo. 2012) (citing *Smith v. Mills,* 123 Colo. 11, 225 P.2d 483, 485 (1950)). "Rather, it holds that 'alleging entrance into a contract is sufficient allegations of its validity, and it is not necessary to set out specifically the nature of existence of consideration to enable the complaint to withstand motion for dismissal.'" *Id.*; *see also Wingerter*, 2011 WL 1135204, at *3 (It is generally "presumed that there is consideration for a written contract, which presumption may, of course, be overcome by evidence to the contrary.") (quotation omitted.) Thus, even if ultimately proven true, Green Tree's argument that Clark fails to allege consideration is insufficient to warrant dismissal of her claims.

In any event, Clark has alleged consideration for both the First TPP and PMA, regardless of whether the TPP and PMA permit Clark to make reduced monthly mortgage payments. As the court explained in *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342 (D. Mass. 2011):

> Invoking the pre-existing duty rule, defendant contends that because plaintiffs' partial monthly mortgage payments under the TPP went towards satisfying their undisputed pre-existing mortgage loan obligations, the TPP payments cannot constitute new bargained-for consideration. . . .
>
> Defendants are correct that modified mortgage payments standing alone would likely not constitute cognizable consideration under the TPP. Plaintiffs' legal detriment, however, consisted of more than the modified monthly payments. As Judge Stearns noted in *Durmic,* "[u]nder the TPP, [plaintiffs] were required to provide documentation of their current income, make legal representations about their personal circumstances, and agree to undergo credit counseling if requested to do so . . . These conditions of the TPP all constitute new legal detriments to plaintiffs that flowed from their acceptance of the TPP.

*Id.* at 351-52 (citing *Durmic v. J.P. Morgan Chase Bank, NA*, No. 10-CV-10380, 2010 WL 4825632, at *3 (D. Mass. Nov. 24, 2010) (other citations omitted); *see Wigod*, 673 F.3d at 564 (consideration where plaintiff "incurred cognizable legal detriments" by agreeing to open new

escrow accounts, undergo credit counseling, and "provide and vouch for the truth of her financial information"); *Sutcliffe*, 283 F.R.D. at 553 (Consideration where plaintiffs "were required to submit financial documents that were not required under the original loan" and "agreed to go to credit counseling if asked to do so.").

Here, with regard to the First TPP, Clark alleged that she "[kept] all of her representations true, [made] her first trial payment, and [provided] several other forms of consideration, including additional exchanged promises." (Compl. ¶ 108.) This includes agreeing to undergo housing counseling if necessary. (Ex. B, FAQs.) Similarly, under the First PMA, Clark alleges she "fulfilled her obligations . . . by keeping her representations true, making her trial payments, and providing several other forms of consideration, including additional exchanged promises and the foregoing of other opportunities." (Compl. ¶ 126.) Again, this includes agreeing to undergo housing counseling, agreeing to use an escrow account, and attesting to legal representations regarding her financial status. (*See* Ex. E, ¶¶ 1, 4(D).) Therefore, the types of consideration alleged by Clark are consistent with the types of consideration alleged in *Bosque* and are adequate to plead breach of contract.[8]

Accordingly, this Court should find Clark has stated a claim for breach of the First TPP and breach of the First PMA.

---

[8] Green Tree purports to rely on *Vida v. OneWest Bank, F.S.B.*, No. CIV. 10-987-AC, 2010 WL 5148473 (D. Or. Dec. 13, 2010) to show Clark hasn't alleged adequate consideration. However, Vida (unlike Clark) only alleged consideration based on "payments made during a loan modification trial period." *Id.* at *7. In *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1346 (S.D. Fla. 2011), plaintiff's alleged consideration focused on actions taken prior to entering into the trial plan (e.g. making escrow payments, living in her home), which the court founds couldn't show consideration for the TPP. In contrast, Clark alleges that she took (and refrained from taking) certain actions as a direct result of the First TPP.

**H.      Clark Stated A Claim For Unjust Enrichment Based On The Higher Payments Charged Under The Second TPP Compared With The First TPP.**

Green Tree next argues Clark hasn't stated a claim for unjust enrichment because supposedly Green Tree was justified in collecting higher payments under the Second TPP as they were less than the payment due under the loan agreement. (Mot. 14.) This confuses the issues. Clark alleges Green Tree was unjustly enriched because it improperly collected higher payments under the Second TPP than she would have been required to pay had Green Tree honored her First TPP. (Compl. ¶ 120.) In other words, she had to pay more money to complete the HAMP trial because Green Tree wouldn't honor her First TPP. It is therefore unjust for Green Tree to retain the <u>additional</u> funds because, regardless of the loan agreement, Clark should've had to pay less to complete the trial plan.

While Clark alleges unjust enrichment based on the Second TPP vis-à-vis the First TPP, Green Tree's cases merely contemplate the lender's retention of trial payments when the borrower doesn't qualify for a modification. *See Bohnhoff v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 849, 853 (D. Minn. 2012) (borrower made trial payments; lender determined she was ineligible for a modification and thus applied her trial payments to the account); *Pennington v. HSBC Bank USA, Nat. Ass'n*, No. A-10-CA-785, 2011 WL 6739609 (W.D. Tex. Dec. 22, 2011) *aff'd sub nom.,* 493 F. App'x 548 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 1272 (2013) (no unjust enrichment where plaintiffs paid monthly trial payments after trial period lapsed); *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1364-65 (S.D. Fla. 2011) (defendant was not unjustly enriched by fees, interest and penalties accrued and payments made under the TPP). Clark agrees Green Tree had the right to retain *some* trial payments—however, it shouldn't be allowed to retain the excess payments that resulted from the Second TPP.

Accordingly, this Court should find Clark has stated a claim for unjust enrichment based on the higher payments charged under the Second TPP.

**I.      Clark Alleges Breach Of The Implied Covenant Based On Both The First TPP and First PMA.**

Green Tree next argues Clark's breach of the implied covenant claim based on the First TPP supposedly fails because the TPP isn't an enforceable agreement and because Clark failed to state her claim with sufficient detail. (Mot. 15-16.) Green Tree also urges the Court to dismiss Clark's implied covenant claim with regard to the First PMA because, according to Green Tree, the PMA isn't an enforceable agreement and does not allow for discretion. (*Id.* 16-17.)

Under Colorado law "*every contract* contains an implied covenant of good faith and fair dealing." *Kirzhner v. Silverstein*, 870 F. Supp. 2d 1145, 1159 (D. Colo. 2012) (quotation omitted). The duty "exists when the contract grants a party discretionary authority. That party may not exercise its discretion in a manner that defeats the reasonable expectations of the other party." *Id.* As explained above, both the First TPP and First PMA are enforceable agreements. (*See supra* Section III(G).) Further, Clark satisfied her pleading standard and alleges that Green Tree abused its discretion under the First PMA.

**1.      Clark's claim under the First TPP is supported by factual allegations.**

Clark's Complaint details the pain-staking hurdles she faced during the modification process. While Green Tree complains that her allegations are "prolix," "conclusory," and without "detail" (Mot. 15-16), Clark incorporated by reference her previous allegations, including her statement of facts. (Compl. ¶ 104.) These facts support her allegations regarding how Green Tree failed to act in good faith. Clark alleges a customer service representative informed her that Green Tree had no record of Clark's First TPP and denied having ever received a faxed copy

from Clark. (*Id.* ¶ 39-40.) These allegation support Clark's claim that Green Tree failed "to perform loan servicing functions consistent with its responsibilities to Plaintiff and high professional standards of care," "routinely claim[ed] to have never received documents from BAC regarding HAMP applications," and "routinely claim[ed] to have never received facsimile or mail submissions of documents sent by borrowers." (*Id.* ¶ 115(a), (c).) Green Tree is therefore mistaken in claiming that Clark's allegations are unsupported conclusions.

Further, Green Tree has no reasonable basis for claiming the breaches alleged by Clark aren't part of the TPP. (Mot. 16.) Clark alleges Green Tree routinely claimed to have lost documents, including her First TPP, provided false justifications for refusing to honor TPPs, and acted in a manner that frustrated Clark's ability to receive the benefit of the bargain under the First TPP. (Compl. ¶ 115.) These claims—all of which center on Green Tree's failure to act in good faith with regard to the TPP—are undoubtedly part of the First TPP.

### 2.     Green Tree Abused Its Discretion Under The First PMA.

Green Tree is also mistaken in claiming that it has no discretion under the First PMA. (Mot. 16-17.) Indeed, Green Tree ignores the language in the First PMA granting Green Tree discretion to review Clark's eligibility for a permanent modification:

> If prior to the Modification Effective Date as set forth in Section 3 the <u>Lender determines</u> that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.

(*See* Ex. E ¶ 2(B)) (emphasis added.) Thus, prior to the Modification Effective Date, the First PMA grants Green Tree discretion to determine whether Clark's Section 1 representations continue to be true, including for example whether her representations regarding her financial hardship continued to be true. (*See id.* ¶ 1.) Clark alleged that Green Tree breached its duty to act

in good faith in exercising this discretion by refusing to honor PMAs where the borrower's representations remained true and correct. (*See* Compl. ¶¶ 145-147.)

Accordingly, Clark has stated a claim for breach of the implied covenant based on Green Tree's failure to act in good faith with regard to both the First TPP and First PMA.

### J.     Clark Alleges A Promissory Estoppel Claim Because She Reasonably Relied On Green Tree's Representations In The First TPP.

Green Tree next argues Clark has failed to state a claim for promissory estoppel based on promises in the First TPP because supposedly "any reliance on the TPP is per se unreasonable because the TPP did not promise a permanent modification."[9] (Mot. 17.) However, courts across the country have found borrowers can reasonably rely on conditional promises made in TPPs because such TPPs require the lender to provide the borrower with a PMA if the borrower satisfies the conditions contained within the TPP. *See, e.g., Wigod*, 673 F.3d at 566; *Cave v. Saxon Mortgage Servs., Inc.*, No. 12-cv-5366, 2013 WL 1915660, at *8-9 (E.D. Pa. May 9, 2013); *In re Citimortgage, Inc. Home Affordable Modification Program (HAMP) Litig.*, No. 11-ml-2274, 2012 WL 1931030, at *4 (C.D. Cal. Apr. 17, 2012). Therefore, Clark can reasonably rely on promises in the First TPP.

Further, Green Tree argues Plaintiff's promissory estoppel claim based on the First PMA should be dismissed because Plaintiff has pled that the First PMA is a binding, enforceable agreement. (Mot. 18.) Plaintiff pled promissory estoppel (Count VII) in the alternative to her breach of contract claims (Count V) and agrees that her claim for promissory estoppel cannot

---

[9] Again, Green Tree contradicts its previous argument wherein in claimed the TPP did promise a permanent modification. (*See* Mot. 10.)

stand if Plaintiff is found to have stated a valid claim for breach of the First PMA. *See Wigod*, 673 F.3d at 566.

### K.    Clark's Claims For Fraudulent Misrepresentation And Violation Of The CCPA Are Not Barred By The Economic Loss Rule.

Finally, Green Tree argues Clark's claims for fraudulent misrepresentation and violation of the Colorado Consumer Protect Act ("CCPA") are barred by the economic loss rule because they seek to enforce rights under the contract. (Mot. 18-20.) Green Tree is mistaken.

The economic loss rule bars recovery in tort for purely economic loss where the conduct falls within the scope of a contract between the parties. *Commercial Union Ins. Co. v. Roxborough Vill. Joint Venture*, 944 F. Supp. 827, 831 (D. Colo. 1996).[10] "[I]f the misrepresentations are distinct from the promises in the contract," fraud based claims are not barred by the economic loss rule. *See Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, 156 F.3d 1243, at *4 (10th Cir. 1998). While Green Tree argues Clark merely alleges it fraudulently misrepresented that if she "complied with the terms of her PMA, her loan would be permanently modified," (Mot. 19), the alleged fraudulent scheme includes practices outside the scope of the First TPP and PMA including Green Tree's practice of: (1) forcing distressed homeowners into higher-interest rate alternatives to HAMP modifications, (2) unlawfully foreclosing or threatening foreclosure or re-taking possession of borrowers' homes, and (3) falsely and improperly reporting borrowers delinquent to the credit bureaus. (Compl. ¶ 177.)

---

[10] In the event this Court finds either the First TPP or First PMA isn't an enforceable contract, Clark may proceed with her respective fraudulent misrepresentation and CCPA claims. *See Paquet v. Smith*, 854 F. Supp. 2d 1003, 1011 (D. Colo. 2012) (since "contract remedies are unavailable to Plaintiffs, the economic loss doctrine does not bar them from bringing conversion and civil theft claims under tort law").

Thus, the HAMP contracts do not defeat Clark's fraudulent misrepresentation claim because the alleged fraudulent scheme extends beyond the scope of the contracts. *Audiotext*, 156 F.3d 1243, at *4. Likewise, the economic loss rule does not apply to Clark's CCPA claim because Clark requested equitable and injunctive relief for Green Tree's alleged violations. Since a request for such a relief goes well beyond pure "economic loss," the economic loss rule should not apply.

## IV.   CONCLUSION

Green Tree has breached its obligations under HAMP TPPs and PMAs and violated various federal, state, and common laws.

WHEREFORE, Plaintiff Shannon Clark respectfully requests this Court deny Green Tree's Motion to Dismiss, or in the alternative grant Plaintiff leave to amend, and award such additional relief as this Court deems equitable, reasonable, and just.

Dated: December 4, 2013                                    Respectfully submitted,

                                                             /s/ Megan L. Lindsey
                                                          One of Plaintiff's Attorneys

STEVEN L. WOODROW #43140
swoodrow@edelson.com
MEGAN L. LINDSEY #43817
mlindsey@edelson.com
EDELSON LLC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Telephone: 303.357.4877
Fax: 303.446.9111

*Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I, Megan L. Lindsey, an attorney, hereby certify that on December 4, 2013, I served the above and foregoing ***Plaintiff's Response in Opposition to Motion to Dismiss (Dkt. 9)*** by causing a true and accurate copy of such paper to be filed with the Clerk of the Court and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                                           /s/    Megan L. Lindsey