**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Philip A. Brimmer**

Civil Action No.:    1:13-cv-2646-PAB-MEH

**SHANNON CLARK**, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

**GREEN TREE SERVICING LLC**, a Delaware limited liability company,

      Defendant.

---

**PLAINTIFF'S FIRST MOTION TO COMPEL THE PRODUCTION OF**
**DOCUMENTS AND INTERROGATORY RESPONSES**

---

## I.     INTRODUCTION

This putative class action challenges Defendant Green Tree Servicing LLC's ("Green Tree" or "Defendant") fraudulent loan servicing practices and serial failure to honor Trial Period Plans ("TPPs") and Permanent Modification Agreements ("PMAs") under the Federal Home Affordable Modification Program ("HAMP"). Though Plaintiff Shannon Clark ("Plaintiff" or "Clark") served her first set of written discovery on Green Tree three months ago and granted Green Tree's requests for additional time to respond, to date Green Tree has failed to produce responsive documents or provide complete answers to Plaintiff's Interrogatories.

The Parties engaged in a telephonic meet and confer on several key items (detailed below) and Green Tree's counsel promised that supplemental discovery responses would be provided by June 9, 2014. In response, Plaintiff communicated a firm deadline of June 11, 2014 and informed Green Tree that she would need to present these issues to the Court if she did not

1

receive Green Tree's supplemental production by that date. Notwithstanding this agreement,

June 11, 2014 came and went and Green Tree still did not supplement its document production

or withdraw its baseless objections as discussed during the meet and confer.

As such, Plaintiff brings this Motion to Compel seeking an order requiring that Green

Tree produce relevant policies, procedures, and a sample of borrower loan files, and to overrule

Green Tree's unsupportable objections. While Plaintiff anticipates that additional discovery

matters may require the Court's involvement[1], Plaintiff wanted to promptly bring to the Court's

attention the questions explained below on which the Parties are already at issue.

## II.    STATEMENT OF THE FACTS

***Plaintiff applied for a loan modification with Bank of America and received a TPP; Green Tree refuses to honor the Bank of America TPP and instead sends Clark a new TPP.***

Plaintiff Shannon Clark experienced financial difficulty during 2012 and applied for a

loan modification through HAMP. (Compl. ¶ 29.) At that time Bank of America ("BOA") was

the servicer for her loan. On September 14, 2012, BOA sent Clark a HAMP TPP ("First TPP"),

which promised that if she made her payments and otherwise complied with the TPP the lender

would send her a permanent modification agreement for her signature. (*Id.* ¶ 14, Ex. B.) The

First TPP was signed by a BOA representative. (*Id.*)

Shortly thereafter, on September 16, 2012, the mortgage servicing rights ("MSRs") for

Clark's loan was transferred to Green Tree. (*Id.* ¶ 30.) Clark contacted Green Tree to inquire

about where to make her first trial payment under the First TPP. (*Id.* ¶¶ 38-39.) Green Tree told

Clark it had no record of the First TPP, which had been approved by BOA, and informed her that

---

[1]    Additional matters may require the Court's involvement. However, the Parties have not yet completed their meet and confer obligations on those items. Plaintiff therefore intends to engage in further meet and confers with Green Tree and will present the additional issues to the

she would have to start the whole process over. (*Id.* ¶¶ 39-41.) Clark re-applied for a HAMP

modification, after which she received another TPP ("Second TPP") that contained materially

worse terms than her First TPP. (*Id.* ¶¶ 43-44.) Fearing that Green Tree would drop her from the

program, Clark complied with the Second TPP and made all of her trial payments. (*Id.* ¶ 45.)

***Green Tree refused to honor the PMA that was signed by both Green Tree and Clark and instead sent her a new PMA for her signature.***

Green Tree then sent a permanent modification agreement ("PMA") to Clark for her

signature. (*Id.* ¶ 46.) Clark complied with the PMA by signing two copies, returning those copies

to Green Tree, and keeping her representations true and correct. (*Id.* ¶ 47.) A Green Tree

representative in turn countersigned the PMA, and the PMA was recorded on May 6, 2013. (*Id.*)

On July 19, 2013, more than two months after her PMA was recorded, and ignoring the

first PMA outright, Green Tree sent Clark a new PMA containing materially worse terms than

her fully executed PMA. (*Id.* ¶¶ 50, 51.) When Clark asked for an explanation regarding why her

PMA wasn't being honored and why she was instead sent a second PMA, Green Tree responded

that it had made 'mistakes' by sending out the wrong PMAs to 'lots' of people. (*Id.* ¶ 59.) Green

Tree also told Clark that her loan would be referred to foreclosure if she refused to sign the

second PMA. (*Id.* ¶ 55.)

***Clark filed her Complaint and served Green Tree with her first set of written discovery and granted Green Tree multiple extensions of time to respond.***

On September 27, 2013, Plaintiff filed her putative Class Action Complaint fraudulent

misrepresentation, unjust enrichment, breach of the TPPs and PMAs, breach of the implied

covenant of good faith and fair dealing, promissory estoppel, and claims under the Federal Equal

Credit Opportunity Act ("ECOA"), Federal Fair Debt Collection Practices Act ("FDCPA"),

Federal Fair Credit Reporting Act ("FCRA"), and Colorado Consumer Protection Act ("CCPA"). Clark's claims centered largely on Green Tree's refusal to honor borrowers' TPPs and PMAs as well as its failure to send proper Validation Notices following the transfer of the MSRs for borrowers' loans to Green Tree. (Dkt. 1.) On November 13, 2013, Green Tree filed a Motion to Dismiss all twelve counts in Plaintiff's Complaint (Dkt. 9) and the Motion has since been fully briefed. Defendant's Motion to Dismiss currently remains pending.

Defendant also moved to stay all discovery in this case pending a ruling on its Motion to Dismiss. (Dkt. 18.) On January 29, 2014, after full briefing by the Parties, the Magistrate Court issued an order denying Green Tree's Motion to Stay. (Dkt. 27.) Thereafter, on March 3, 2014, Plaintiff served Green Tree with her first set of Interrogatories and Requests to Produce. In response, defense counsel requested an extension of time until May 9, 2014 for Green Tree to provide its answers, which Plaintiff granted. (*See* Declaration of Megan Lindsey, ¶ 3, attached as Exhibit A.) On May 9, 2014, Defendant requested a further extension until May 15, 2014, which Plaintiff granted. On May 14, 2014, Defendant requested additional time to respond to Plaintiff's interrogatories, until May 16, 2014, which Plaintiff again granted. (*Id.* ¶ 4.)

***The Parties meet and confer on Green Tree's failure to produce relevant documents or to provide complete responses to several interrogatories.***

On May 14, 2014, Defendant produced its responses to Plaintiff's first set of interrogatories, and on May 16, 2014, Defendant produced its responses to Plaintiff's first set of requests to produce. (*Id.* ¶ 5.) On May 21, 2014, Plaintiff sent a letter to Defendant detailing significant issues with Defendant's discovery responses, including the fact that Defendant hadn't produced any policies or procedures and hadn't produced substantive responses to Plaintiff's interrogatories. The May 21, 2014 letter requested a time when the Parties could meet and confer

on the various items. (*See* May 21, 2014 Letter to Green Tree, attached as Exhibit B.) In her

letter, Plaintiff also explained that given the significant issues with discovery responses she was

not in a position to designate a class certification expert by June 1, 2014.[2] (*Id.*)

On May 30, 2014, counsel for the Parties participated in a telephonic meet and confer

regarding discovery issues. During that meet and confer, the Parties first discussed Green Tree's

failure to produce ***any*** policies and procedures and, relatedly, its failure to provide substantive

response to Interrogatories Nos. 2, 5, 6,7, 11, 12, 13, 14, 17, and 10. Green Tree admitted that it

had not produced policies and procedures and stated that it was in the process of gathering such

documents and that the production was forthcoming. (*See* June 4, 2014 Letter, attached as

Exhibit C.) The Parties also discussed Green Tree's failure to produce form contracts, form

correspondence, or the polices and procedures sought via Requests to Produce Nos. 4, 6, 8, and

15. (*See id.*) Green Tree's lawyers indicated that they were also working to gather these

documents and that the responses would be forthcoming. (*Id.*)[3]

In follow-up correspondence, Green Tree confirmed that it anticipated producing the

supplemental documents by June 9, 2014. (*See* June 2, 2014 Email, attached as Exhibit D.) In a

subsequent letter, Plaintiff informed Green Tree that if she did not receive the documents by June

11, 2014, she would need to bring such issues to the Court. (*See* Ex. C.) On June 12, 2014,

Plaintiff's counsel sent a follow-up email to Green Tree's counsel indicating that she would be

---

[2] The Parties sought and received a modification to the Scheduling Order that sets Plaintiff's deadline to designate class certification experts as July 15, 2014. As explained herein, given Green Tree's failure to produce responsive documents or to provide substantive answers to Plaintiff's interrogatories, Plaintiff now foresees the need to request additional time from the Court to designate her class certification experts and to move for class certification.

[3] With regard to form letters, Green Tree asked whether it could point out form letters that Clark had received in lieu of producing additional copies of those letters. Plaintiff assented to this request.

taking the issues to the Court and asking Green Tree to respond if it believed a further meet and confer was required. (*See* June 12, 2014 Email, attached as Exhibit E.) Green Tree did not respond indicating that any further meet and confer was required. (*See* Lindsey Decl. ¶ 7.)

In addition to Green Tree's failure to produce policies, procedures, form contracts, and correspondence—which Green Tree had promised were forthcoming but which Plaintiff still has not received—Green Tree refuses to produce simple random samples of relevant borrower loan files. (*See* June 9, 2014 Letter, attached as Exhibit F.) During the meet and confer held on May 30, 2014, Plaintiff agreed to provide a list of the specific documents that she seeks from each loan file and, on June 4, 2014, Plaintiff's counsel sent defense counsel a letter specifying the documents needed from each file in the proposed sample. (*See* Ex. C.) Notwithstanding this limitation, Green Tree refuses to produce any sample claiming the production and redaction process "are simply too burdensome during pre-certification discovery." (Ex. F.)

Green Tree has also failed to provide complete answers to Interrogatories Nos. 6-7 and 11-14, claiming that it isn't required to provide any information regarding the policies and procedures for investors other than the investor who held Clark's loan. The Parties discussed this issue during the meet and confer on May 30, 2014, and defense counsel generally agreed that the investor-based objections lacked merit. (*See* Ex. C.) In its June 9, 2014 letter, however, Green Tree stated that it stands behind its objection and will not be producing policies and procedures for investors other than the one investor for Clark's loan. (*See* Ex. F.) Similarly, Green Tree objected to Interrogatory No. 15 on the grounds that it wasn't limited to loans that were previously serviced by Bank of America. During the meet and confer, the Parties addressed this and agreed that it was proper for Plaintiff not to limit the Interrogatory because the Class

6

definition was not limited to loans that were previously serviced by Bank of America. (*See* Ex.

C.) Green Tree's counsel indicated that Green Tree would likely withdraw its objection, but to-

date Green Tree has not done so. Plaintiff's counsel sent an email to defense counsel on June 12,

2014, explaining that she believed the Parties were at issue on these interrogatories and asking

defense counsel if they believed additional meet and confers were required. (*See* Ex. E.) Defense

did not indicate that a further meet and confer was needed. (Lindsey Decl. ¶ 7.)

As such, and as explained below, Clark brings this Motion to Compel requesting an order

that compels Green Tree to produce documents responsive to Plaintiff's first set of requests to

produce and to provide complete responses to Plaintiff's first set of interrogatories.

## III.    ARGUMENT

Under Federal Rule of Civil Procedure 26(b), parties may obtain discovery regarding any

matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b);

*Atkinson v. Ortiz*, No. CIVA06CV01725-EWNMJW, 2008 WL 659596, at *1 (D. Colo. Mar. 6,

2008). Rule 26(b) provides that "[f]or good cause, the court may order discovery of any matter

relevant to the subject matter involved in the action" and "[r]elevant information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence." *Id.* "A given topic is relevant if it has 'the mere tendency' of making any

material fact more or less probable." *Joyce v. N. Metro Task Force*, No. 10-CV-00649-CMA-

MJW, 2011 WL 1884618 (D. Colo. May 18, 2011). The Court has "substantial discretion in

handling discovery requests under Rule 26(b)." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619

F.3d 1151, 1164 (10th Cir. 2010).

Federal Rule of Civil Procedure 37(a), in turn, provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Under Rule 37, "an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer, or respond." *Deuty v. HP (Hewlett-Packard)*, No. 10-CV-00562-WYD-KMT, 2011 WL 834197 (D. Colo. Mar. 4, 2011) (quoting Fed. R. Civ. P. 37(a)(4)).

A. **This Court Should Compel Green Tree to Produce the Policies and Procedures, Form Contracts, and Form Correspondence that are Sought Via Requests to Produce Nos. 2, 4, 6, 8, 14, and 15 and Referenced in Green Tree's Responses to Interrogatories Nos. 2, 5, 6, 7, 11, 12, 13, 14, 17, and 10.**

First, this Court should compel Green Tree to produce the documents sought via Requests to Produce Nos. 2, 4, 6, 8, 14, and 15. (*See* Plaintiff's First Set of Requests to Produce, attached as Exhibit G.) These requests seek Green Tree's policies and procedures, form contracts, and form correspondence related to its acquisition of MSRs from Bank of America, its HAMP loan modification process, its notification of Green Tree's intent to take adverse action against borrowers, and it investigation of disputes regarding the accuracy of information reported to credit bureaus. Green Tree does not dispute that it is required to produce such documents. For example, in response to Request to Produce No. 2, Green Tree states: "Subject to and without waiver of the foregoing, Green Tree shall produce all non-privileged records responsive to this Request in its possession, custody and/or control at a time and place that is mutually convenient for all parties." (*See* Green Tree's Responses to Plaintiff's First Set of Requests to Produce, attached as Exhibit H.) Green Tree similarly agreed to produce documents in response to Requests Nos. 4, 6, 8, 14, and 15. However, to date Green Tree still has not produced any of its responsive documents despite repeated extensions (Plaintiff served her Requests to Produce more than three months ago) and a promise by Green Tree's lawyers that the documents would

8

be produced by June 9, 2014. (*See* Ex. D.) As such, the Court should order Green Tree to produce all responsive documents without further delay.

Green Tree's failure to produce policies and procedures, form contracts, and form correspondence is further problematic because Green Tree has not provided substantive responses to Interrogatories Nos. 2, 5, 6, 7, 11, 12, 13, 14, 17, and 10. (*See* Plaintiff's First Set of Interrogatories, attached as Exhibit I.) Instead, with regard to each of these Interrogatories, Green Tree states that "pursuant to Fed. R. Civ. P. 33(d)" the answer to the Interrogatory can be examined by reviewing the relevant policy, which supposedly "will be produced at a mutually convenient time and place in response to Plaintiff's Document Request." (See Green Tree's Responses to Plaintiff's First Set of Interrogatories, attached as Exhibit J.) During the Parties' May 30, 2014 meet and confer, defense counsel confirmed that the policies that Green Tree intends to produce are responsive to the Interrogatories and, again, Green Tree indicated that the documents would be produced by June 9, 2014. (*See* Ex. D.) To date however, Green Tree has neither produced the policies nor supplemented its Interrogatory responses. (Lindsey Decl. ¶ 6.) Therefore, this Court should order Green Tree to produce the policies referenced in Green Tree's Interrogatory responses or order Green Tree to provide supplemental responses to Interrogatories Nos. 2, 5, 6, 7, 11, 12, 13, 14, 17, and 10 describing in complete detail Green Tree's policies and procedures.

> **B.      This Court Should Compel Green Tree To Produce Simple Random Samples of Borrower Loan Files Consisting of Specific Documents in Response To Requests To Produce Nos. 21, 22, and 23.**

This Court should also compel Green Tree to produce documents in response to Requests to Produce Nos. 21, 22, and 23, which seek simple random samples of loan files for (1)

borrowers whose MSRs were transferred from BOA to Green Tree, (2) borrowers who received TPPs from BOA that Green Tree then refused to honor, and (3) borrowers who received PMAs from Green Tree where Green Tree did not cause the borrower's loan to be modified within sixty days. (*See* Ex. G.) Green Tree hasn't objected to the sample files on the basis of relevance, but rather claims it isn't required to produce the Samples because supposedly the redaction process is "simply too burdensome during pre-certification discovery." (*See* Ex. F; *see also* Ex. H.)

First, Defendant ignores that discovery has not been bifurcated in this case. Under the current case management schedule there would not be sufficient time for Plaintiff to seek samples after the Court issues a ruling certifying the class. Plaintiff's deadline to file her reply in support of class certification is December 31, 2014 and her deadline to designate non-class expert witnesses is just fifteen days later, on January 15, 2015. (*See* Dkt. 42.) It's unthinkable that Plaintiff would be able to obtain a ruling on her motion for class certification, issue discovery related to sampling, receive sample loan files from Green Tree, review the allegedly thousands of pages of sample files, and use those files to determine her expert witnesses in a mere fifteen days. Therefore, this Court should overrule Green Tree's objection that sampling would be too burdensome during the "pre-certification" stage as sampling "post-certification" would be patently unworkable.

Second, Plaintiff anticipates that her class expert will need to use the loan files to opine as to whether damages can be calculated on a classwide basis for purposes of certification. By way of example, in Request No. 22 Plaintiff seeks a simple random sample of borrowers who received TPPs from BOA before the MSRs for their loans were transferred to Green Tree. (*See*

Ex. G.) As Plaintiff explained in her June 4, 2014 letter, the specific documents that Plaintiff

seeks are:

- Loan origination documents,
- HAMP Application Materials,
- Any and all correspondence between BOA and the borrower relating to the HAMP, the Borrower's default, or referral of the Borrower's loan to foreclosure,
- Any and all correspondence between Green Tree and the borrower relating to the HAMP, the borrower's default, or referral of the borrower's loan to foreclosure,
- Servicing Notes and Collection Notes,
- Any and all HAMP-related documents, including TPPs, PMAs, Waterfall worksheets or analyses, NPV analyses, and other records relating to the review or re-review of the borrower's eligibility to participate in HAMP, and
- The borrower's credit report and all correspondence relating to the Borrower's credit report.

These documents may be used by an expert to assess the damages suffered by each borrower

within the Sample, which can then be used to craft an equation that accurately models the

damages suffered on a classwide basis. For example, Plaintiff alleges in her complaint that she

and the BOA TPP Class were damaged because they were charged late fees. (Compl. ¶ 102.) The

correspondence that Plaintiff seeks between the loan servicers and the borrowers should include

monthly loan statements, which will in turn show the monthly late fees that the Sampled

borrowers were being charged monthly. Similarly, modification documents would enable an

expert to calculate the damages suffered based on the value of the TPP that the borrower should

have received but was denied. (*See id.*) Plaintiff thus needs to be able to present the sample

documents to her expert for review to aid the expert in determining whether such a model can be

reasonably developed ***prior*** to moving for class certification.

Third, Green Tree has failed to show that Plaintiff's document requests are too

burdensome, beyond claiming that it's time consuming to redact documents. In an effort to

reduce any burden to Green Tree, Plaintiff has provided a specific list of documents that she

seeks via the production. (Ex. C.) Further, redacting such information is unnecessary given that

discovery in this case is subject to an official protective order. (*Id.*; *see* Dkt. 35.) As a party

asserting undue burden, Green Tree must establish facts justifying its objection, which would

typically require Green Tree to "provide an affidavit or other evidentiary proof of the time or

expense involved." *Sonnino v. Univ. Kansas Hosp. Auth.*, 220 F.R.D. 633, 653 on reconsideration

in part sub nom. *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661 (D. Kan. 2004). Thus

far, Green Tree has not presented any facts—whether by affidavit or otherwise—to support its

burden objection. Accordingly, this Court should compel Green Tree to produce simple random

samples of loan files in response to Requests Nos. 21, 22, and 23.

**C.     This Court Should Compel Green Tree to Provide Answers Regarding Policies and Procedures for all Investors in Response to Interrogatories Nos. 6-7 and 11-14.**

With respect to Interrogatories Nos. 6-7 and 11-14, the Parties are at issue regarding

whether Green Tree is required to produce information regarding policies and procedures for

investors other than the investor who held Clark's loan. These interrogatories seek information

on Green Tree's policies and procedures for (1) honoring or refusing to honor TPPs that BOA

entered into with borrowers before their servicing rights were transferred to Green Tree, (2)

reviewing borrower eligibility for HAMP TPPs, (3) reviewing and implementing PMAs, (4)

verification of Borrower's eligibility to receive a PMA for their signature, and (5) Green Tree's

signing of PMAs, along with the quality control steps that Green Tree takes, if any, to ensure that

loans aren't referred to foreclosure or foreclosed on after the borrower receives a signed PMA.

(*See* Exs. F, J.) Green Tree has objected to these interrogatories on the basis that "policies for

investors that are not an owner and/or investor of Plaintiff's mortgage loan are not relevant to any claim in this lawsuit." (*See* Ex. J.) Such objections are nonsensical. None of the Classes defined in Clark's Complaint are limited to only borrowers who share the same investor as Clark. Further, there is no reason to believe that the requested policies are investor-specific. That is, the policies sought address Green Tree's adherence (or lack thereof) to the HAMP directives, not to any particular policy of this or that investor.

During their meet and confer the Parties discussed this objection and defense counsel agreed that it likely was not sustainable because the policy doesn't change depending upon the investor. (*See* Ex. C.) Plaintiff asked for a timely response as to whether Green Tree would be withdrawing it objection. In a follow up letter sent June 9, 2014, however, Green Tree's counsel backtracked, saying that Green Tree was "investigating whether the BOA loans had multiple investors and if so, whether those investors had different policies than those which applied to Ms. Clark" and that "Once that investigation is complete, I will advise you as to whether we can withdraw the objection."

Green Tree has had over three months to investigate whether the polices and procedures of the investor on Clark's loans are similar to those used by other investors. To date, Green Tree has failed to make any showing whatsoever (whether through formal discovery responses or otherwise) that the policies and procedures followed by Clark's investor differ in any way from the policies and procedures mandated by other investors. Put simply, Plaintiff cannot wait any longer for Green Tree to conduct its 'investigation,' which appears to be based on a meritless distinction in any case. (*See* Ex. C.)

Further, as explained above, Plaintiff's Complaint was filed as a putative class action and discovery in this case has not been bifurcated. There would not be adequate time to conduct discovery into the policies and procedures for investors other than Clark's investor *after* Plaintiff achieves class certification. Green Tree thus fails to present any rational basis for its failure to produce its HAMP policies and procedures, regardless of the  investor. As such, this Court should compel Green Tree to produce all responsive policies and procedures (and/or provide a comprehensive written response to Interrogatories Nos. 6-7 and 11-14), regardless of whether they are allegedly specific to the investor that owns Clark's loan.

> **D.     This Court Should Find that Green Tree is Required to Respond to Interrogatory No. 15 by Stating the Number of Loans Where Green Tree Refused to Honor the PMA, Regardless of Whether the Loan was Transferred From BOA.**

Finally, Interrogatory No. 15 asks Green Tree to state the number of loans where Green Tree refused to honor the borrower's PMA and the number of loans where Green Tree provided the borrower with a new PMA for his or her signature. (*See* Ex. I.) Green Tree objects claiming that the Interrogatory should be limited to loans that were previously serviced by BOA. (*See* Ex. J.) The Parties discussed this objection during their May 30, 2014 meet and confer and Green Tree's counsel agreed that the objection regarding BOA was not relevant because the class definition does not turn on whether the loan was previously serviced by BOA. (*See* Ex. C.) Regardless, to-date Green Tree has not withdrawn its objection.

While the Parties still need to discuss what, if any, steps Green Tree has taken and could potentially take to determine the number of borrowers sought via this Interrogatory, it is highly probably that this issue will also need to be explored via a Rule 30(b)(6) deposition, which the Parties are still working to schedule. Plaintiff therefore asks that the Court order Green Tree to

withdraw its objection to Interrogatory No. 15 with regard to loans previously serviced by BOA and compel Defendant to provide a complete answer.

## IV.    CONCLUSION

Green Tree has failed to produce policies and procedures and sample loan files, and it refuses to provide complete responses to several of Plaintiff's interrogatories claiming it isn't required to respond under Federal Rule 33(d). Green Tree has also asserted several improper objections to Plaintiff's interrogatories. This Court should grant Plaintiff's Motion to Compel and order Green Tree to immediately supplement its document production, withdraw its objections, and supplement its interrogatory responses.

WHEREFORE, Plaintiff Shannon Clark respectfully requests that this Court grant her Motion to Compel and order Green Tree to immediately supplement its document production and interrogatory responses and withdraw certain objections as set forth herein, and award such additional relief as this Court deems equitable, reasonable, and just.

Dated: June 27, 2014                                Respectfully submitted,

                                                      /s/ Megan L. Lindsey
                                                     One of Plaintiff's Attorneys

STEVEN L. WOODROW #43140
swoodrow@edelson.com
MEGAN L. LINDSEY #43817
mlindsey@edelson.com
EDELSON LLC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Telephone: 303.357.4877
Fax: 303.446.9111

*Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I, Megan L. Lindsey, an attorney, hereby certify that on June 27, 2014, I served the above

and foregoing **_Plaintiff's First Motion to Compel the Production of Documents and_**

**_Interrogatory Responses_** by causing a true and accurate copy of such paper to be filed with the

Clerk of the Court and transmitted to all counsel of record via the Court's CM/ECF electronic

filing system.

  /s/   Megan L. Lindsey
