# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

SHANNON CLARK,                                    )
individually and on behalf of all others similarly    )          CASE NO. 13-cv-2646
situated,                                          )
                                                  )
            Plaintiff,                             )
                                                  )
                                                  )
                                                  )
            v.                                     )
                                                  )
GREEN TREE SERVICING LLC, a Delaware              )
limited liability company,                        )
                                                  )
            Defendant.                             )

---

## GREEN TREE'S RESPONSE TO PLAINTIFF'S FIRST MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

---

### INTRODUCTION

This case is about a plaintiff who has very specific complaints and seeks to have a class certified on those same very specific facts without any support for her contentions that there are other borrowers who suffered the same fate.[1]  As a result, she is using discovery as a weapon to search for other potential members of the class.   Under the law of this district, this is an inappropriate use of discovery.

### BACKGROUND FACTS

Plaintiff, Shannon Clark ("Clark"), alleges that after experiencing "financial difficulty" paying her mortgage loan (the "Loan") she applied for a Home Affordable Modification Program ("HAMP") modification.  [ECF No. 1 at ¶29].  Clark claims that Bank of America ("BOA"), the former servicer of her Loan, approved her for a trial payment plan "TPP" (the "First TPP") on

---

[1]        Clark's complaints are the subject of a fully briefed motion to dismiss. [ECF No. 9].

September 14, 2012 – two days before servicing of the Loan was allegedly transferred to Green Tree. According to the Complaint, when Clark contacted Green Tree on October 15, 2012, to ascertain the address for the initial trial payment, she was advised that "Green Tree had no record of [the] First TPP." [*Id.* at ¶39].  Clark alleges that she submitted a new HAMP application to Green Tree and, by letter dated December 5, 2012, was approved for a second TPP (the "Second TPP") with trial payments that were "[$]208.71 more per month" than the First TPP. [*Id.* at ¶44].

Clark allegedly made timely trial payments and on March 20, 2013, was allegedly approved for a permanent modification agreement (the "First PMA") with a 25 year term. [*Id.* at ¶46].  The Complaint asserts that Clark "didn't agree with how Green Tree had calculated her income" but took all required steps to effectuate the First PMA.  [*Id.* at ¶48].  Clark alleges that on or about July 19, 2013, Green Tree sent her a different PMA (the "Second PMA") which had lower monthly payments but a 40 year term. [ECF No. 1 at ¶¶50-51].

Clark claims that Green Tree continuously sent her foreclosure and loss mitigation notices.  [*Id.* at ¶52].  Clark allegedly "called Green Tree to ask why she was still receiving foreclosure and loss mitigation notices" and was allegedly advised that "something was done incorrectly with her account."  [*Id.* at ¶53].  Green Tree allegedly informed Clark that her reported income did not allow it to offer loan terms consistent with the First PMA and threatened to foreclose if "she didn't sign the second PMA."  [*Id.* at ¶¶55-56].

Clark is the only class representative.  While she makes sweeping allegations that the class "encompasses hundreds, if not thousands, of individuals whose identities can be readily determined from Defendant's books and records," [ECF No. 1 at ¶67], Clark has not identified any Green Tree practice or procedure that would result in a large number of similarly situated borrowers being harmed. Moreover, the Complaint does not identify a single loan acquired from

any entity other than Bank of America that allegedly suffered the same fate as Clark's loan.   In alleging that other borrowers experienced similar issues, Clark offers only two cursory allegations: (1) that an unidentified Green Tree customer service representative told Clark not to be concerned about having to resubmit all of her paperwork and starting the HAMP application process all over because the same thing was happening to "hundreds" of people; and similarly (2) that an unidentified customer representative told her that Green Tree had sent the wrong PMAs to "lots" of other people.   [ECF No. 1 at ¶¶68-69].   Based on these two conversations, Clark seeks burdensome and onerous discovery that will require Green Tree to scour its files on a loan by loan basis.   This is not appropriate at this phase of the litigation given Clark's unsubstantiated allegations that her experiences were widespread.[2]

## STATUS OF DISCOVERY DISPUTES

Since Clark filed her motion to compel on June 27, 2014, Green Tree has provided much of the information that is the subject of the motion to compel.  However, the following issues are still outstanding.

**Requests to Produce Nos. 2, 4, 6, 8, and 15** "seek Green Tree's policies and procedures, form contracts, and form correspondence related to the acquisition of MSRs [mortgage servicing rights] from Bank of America, its HAMP loan modification process, its notification of Green Tree's intent to take adverse action against borrowers, and its investigations of disputes regarding the accuracy of information reported to credit bureaus."   [ECF No. 43 at pp. 8-9]. Green Tree has produced the relevant policies and provided Clark with a list of all the form documents associated with her file.  [Wallace Decl. ¶3].

---

[2]      Even assuming these conversations took place and that there is some truth to these statements, this does not translate to the referenced borrowers having similar claims against Green Tree or being members of the same class.

**Requests to Produce Nos. 21-23** seeks 300 sample loan files.  [ECF No. 43 at pp. 9-12].  Green Tree has not produced these documents and will address the requests below.

**Interrogatories Nos. 6-7 and 11-14** seek policies and procedures regarding investors other than Clark's investors.  [ECF No. 43 at pp. 12-14].   Green Tree has withdrawn this objection as it relates to Interrogatories Nos. 6 and 7 because the relevant policies and procedures for the BOA transferred loans are either BOA's and Green Tree's policies (which Green Tree has already produced) or are Fannie Mae's policies which are publicly available.  [Wallace Decl. at ¶4].  Green Tree addresses the objection regarding Interrogatories Nos. 11-14 below.

**Interrogatory No. 15** was initially objected to by Green Tree on the grounds that it sought information about investors other than BOA.  [ECF No. 43 at 14-15]. Green Tree has withdrawn this objection.  [Wallace Decl.  ¶5].

## ARGUMENT

Based on her alleged personal experience with Green Tree and the allegation that someone from Green Tree reassured Clark that she was not the only borrower who had experienced these issues, Clark identifies two classes: (1) all homeowners who received a HAMP TPP prior to their loan being transferred from BOA to Green Tree where Green Tree refused to recognize the TPP; and (2) all borrowers for whom Green Tree refused to honor an executed PMA.  [ECF No. 1 at ¶64].

Fed. R. Civ. P. 26(b)(1) provides that  "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Under Federal Rule of Civil Procedure 26, "any discovery sought must be relevant. "  *Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 552-53 (D. Colo. 2009).  The relevancy of a discovery request is not presumed.  *See id.* at 553.  The requesting party has the burden of demonstrating relevancy if the

request is "overly broad on its face or when [its] relevancy is not readily apparent . . . ." *Id.* at 553.  If the requesting party can demonstrate relevancy, the burden shifts to the resisting party to "[demonstrate that] the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  *Id. at* 552 (citations and quoted authority omitted).

   *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998) addresses the appropriate scope of pre-certification discovery.  In *Tracy*, the plaintiff alleged that Dean Witter failed to pay her overtime.  *Id.*  The plaintiff sought nationwide discovery over Dean Witter's objection. *Id.*at 303.  Because the plaintiff had no evidence that the policy about which the plaintiff complained was not limited to a de facto policy of the Denver office, the court refused to extend discovery beyond the office in which the plaintiff worked.  *Id.* at 305-06.  The court held that

> the recognized need for pre-certification discovery is subject to limitations which may be imposed by the court, and any such limitations are within the sound discretion of the court.  The discovery which is permitted should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence, which will meet the requirements of Rule 23, yet <u>not be so broad that the discovery efforts present an undue burden to the defendant.  Discovery is not to be used as a weapon,</u> nor must discovery on the merits be completed preceding class certification.

*Id.* at 304-05 (emphasis added).

   When managing class actions, "district courts are required to balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties."  *Id.*  Before class-wide discovery is allowed, a plaintiff must demonstrate that there is some factual basis for plaintiff's claim that the wrong at issue extends beyond the facts

of his or her case. *Id.* As the *Tracy* court explained, "extended discovery should not be allowed to plaintiffs if they can present no evidence, or if they present insufficient evidence, to warrant a conclusion that extended discovery is reasonably likely to yield support for the class allegations which have been made, particularly if the extended discovery will result in undue prejudice to [the defendant]." *Id.* at 312.

Here, Clark asks the Court to compel Green Tree to provide information that would require it to manually review thousands of loan files, each of which contains hundreds if not thousands of pages, on a loan by loan basis and then to produce hundreds of thousands of pages of confidential borrower information solely because Clark alleges that a Green Tree employee reassured her that she was not alone in having issues with the transfer of her loan from BOA to Green Tree. She is also asking the Court to compel Green Tree to furnish policies and procedures that precede when Green Tree started servicing the Loan and for information about investors with whom Clark has never had a loan.

## I.    Clark's Request for Random Samples of Loan Files is Overly Broad, Unduly Burdensome and Does Not Seek Relevant Evidence.

Clark requests three "simple random samples of 100 Borrowers" for each of the following categories: (1) borrowers "whose loans were in default when the MSRs [mortgage servicing rights] for the loan were transferred from Bank of America to Green Tree";[3] (2) borrowers "who received TPPs from Bank of America before their MSRs were transferred to Green Tree where Green Tree refused to honor the Bank of America TPP"; and (3) borrowers "who had signed PMAs but whose loans Green Tree did not permanently modify (or implement or effectuate the permanent modification) within 60 days of the bank's execution and return of

---

[3]    Clark does not define default. For the purpose of this Response, Green Tree defines serious default as at least 90 days delinquent. [Hidinger Decl. ¶7].

the PMA."[4]  [ECF No. 43-3 at p. 16/35 (Document Request Nos. 21-23)].  Clark describes these

requests as simple, but they are clearly burdensome.  The time frame for these requests is from

January 1, 2009 to the present.  [ECF No. 43-3 at p. 16/35].  During that period, BOA transferred

in excess of one million loans to Green Tree.  [Hidinger Decl. ¶3].  Of the three categories—the

only category for which Green Tree can locate the documents absent a manual loan review is the

first category.  [Hidinger Decl. ¶¶7-8].  In order to do so, Green Tree must conduct a monthly

search during the five year period to determine the number of delinquent loans transferred from

BOA at any given month.  For instance, in September 2012, the month in which Clark's loan was

transferred, there were 4,822 loans transferred and of those loans, 3,707 were in default.

[Hidinger Decl. ¶7].  While identifying 100 sample loans that were in default at the time of the

BOA transfer is possible, these loan files are not relevant.  Clark's supposed class encompasses

borrowers who had received a TPP prior to transfer and then that TPP was not honored post

transfer.  As a result, producing files of the defaulted loans where there is no evidence that any

loan qualified for a TPP, much less was offered one pre-transfer, is not likely to advance Clark's

case and for the reasons stated below, is unduly burdensome given the marginal relevance.

Because Green Tree cannot electronically track the loans in the way Clark has requested

in her second two categories, Green Tree would have to conduct a loan by loan review in order

to locate responsive documents needed to provide a "simple sample" (as Clark characterizes it).

As a result, for the month of September 2012 alone, Green Tree will be required to review 3,707

loan files.  [Hidinger Decl. ¶8].  Green Tree would first have to designate certain employees for

---

[4]       While Green Tree withdrew its objection to Interrogatory No. 15 that the Interrogatory that it
sought information about investors other than BOA, Green Tree is not able to respond to the interrogatory
for the same reason it is not able to provide a sample of 100 loans.  It does not track its loans based on
executed PMAs that for some reason do not result in permanent modifications being implemented.
[Hidinger Decl. ¶¶6-7].

this task, and train them to identify the responsive documents. [*Id.*].  Green Tree estimates it will take fifteen to twenty minutes per loan to determine if each loan fits within the requested sample group.  [Hidinger Decl. ¶8].  As a result, Green Tree would have to spend at least 55,605 minutes (or 926.75 hours) (3,707 X 15) to generate the loan files needed to produce the requested sample set of just one month.  [Hidinger Decl. ¶8].  In September 2012, more than 70% of the transferred loans were in default.  [*Id.*].  Assuming that percentage applies to the entire BOA portfolio, Green Tree would have to review 700,000 loan files to comply with Clark's discovery requests.

Green Tree estimates the average loan file is approximately 1,000 pages to 1,500 pages (Clark's loan file was 1,434 pages).  [Hidinger Decl. ¶4; Wallace Decl. ¶7]. [5]  Setting aside the fact that Green Tree has no way of identifying the requested samples absent reviewing approximately 700,000 loans,  and assuming Green Tree could generate a sufficient sample of 100 loans (for the latter two categories), it will then need to redact information from each of those loan files.  Those files would then have to be reviewed by attorneys to ensure that no sensitive personal information or privileged materials are produced.  This is a very time consuming and expensive process.  For instance, it took a paralegal 10.8 hours to redact Clark's loan file.  [Wallace Decl. ¶6].  Properly redacting 300 loan files will require a 300,000-450,000 page production and approximately 2,100 hours of paralegal time.  [Wallace Decl. ¶7].  In addition, loan files (including specific documents in the loan files that Clark wants, such as origination documents) include very personal and confidential information.  Among other things, the loan files contain personal tax returns which are generally not discoverable in Colorado and

---

[5]     Clark offered to limit the request to certain documents in the loan file, but after reviewing the limitations Green Tree determined it would not provide any cost savings because of the time it would take to review the loan files to pull out the relatively few documents that Clark was willing to forego. [Wallace Decl. ¶8].

certainly would not be here since the tax return pertains to a non-party.  *In re Dist. Court, City & Cnty. of Denver, 09CV7235.*, 256 P.3d 687, 691 (Colo. 2011) (party seeking disclosure of tax returns bears the burden of showing that: "(1) the information is relevant to the subject of the action; and (2) there is a compelling need for the information in the returns because the information sought is not otherwise readily obtainable.");  *see also Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 159 (Colo. 2008) (Colorado has a "strong policy in favor of nondisclosure of tax returns").

Requiring Green Tree to undertake such a burden is simply not warranted given the factual basis for Clark's assertion that the wrong about which she complains extends beyond the facts of her case and to others: two off-handed comments by customer service representatives should not serve as the basis for such a burdensome and onerous discovery request.  *Tracy*, 185 F.R.D. at 305.  To allow discovery of this magnitude based on such conclusory allegations is tantamount to sanctioning a very expensive fishing expedition.  *Charles v. Nationwide Mut. Ins. Co., Inc.*, No. 09 CV 94 (ARR), 2010 WL 7132173, *9 (E.D.N.Y. May 27, 2010) (holding that the burden of production due to the necessary redactions outweighed any relevance the documents might have).

## II.   Green Tree Should Not Have to Produce Policies and Procedures for Investors Other Than Clark's Investors

Green Tree is a servicer of loans; it does not own the loan itself.  [Hidinger Decl. ¶5]. The actual owner or "investor" of the loan directs Green Tree on how to service the loans. [Hidinger Decl. ¶5].  In other words, the policies and procedures that Green Tree follows are owner or investor-driven.  Green Tree has already produced the responsive policies for BOA (the investor for Clark's loan) and its own internal policies.  [Wallace Decl. ¶3].  In Interrogatory

Nos. 11-14, Clark requested the policies and procedures relating to permanent modifications of any kind (not limited to HAMP) over a five and a half year period *for any investor whatsoever*.

For the following reasons, this request is overly broad.  Green Tree services loans for approximately 381 investors.  [Hidinger Decl. ¶5].  Each investor does private modifications in addition to HAMP modifications [*Id.*].  Each investor has its own policies for implementing those modifications, which have evolved over time.  [*Id.*].  To require Green Tree to produce all policies (even those not applicable to Clark's loan) from numerous investors (none of whom are alleged to have any relationship with Clark's loan) over a five and half year period (including policies and procedures that were in place three and a half years before Clark's loan was transferred for servicing to Green Tree) based on two statements made by customer service representatives in 2012 and 2013 is imposing a burden on Green Tree that is not consistent with the scant nature of Clark's allegations that others may have suffered the same issues about which she complains.  *Tracy*, 185 F.R.D. at 305.

## CONCLUSION

For the reasons stated above, Green Tree respectfully requests that the Court deny Clark's motion to compel.

Respectfully submitted,

/s/  *Sarah B. Wallace*

| | |
|---|---|
| Of Counsel: | Sarah B. Wallace |
| Martin C. Bryce, Jr. | wallaces@ballardspahr.com |
| Ballard Spahr LLP | Ballard Spahr LLP |
| 1735 Market Street, 51st Floor | 1225 17th Street |
| Philadelphia, PA  19103 | Suite 2300 |
| Telephone: 215.864.8238 | Denver, CO  80202-5597 |
| Facsimile: 215.864.8999 | Telephone: 303.292.3400 |
| | Facsimile: 303.296.3956 |

Dated:  July 23, 2014.     *Attorneys for Defendant Green Tree*

**CERTIFICATE OF SERVICE**

I hereby certify that on this July 23rd a true and correct copy of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Steven Woodrow, Esq.
Megan Lindsey, Esq.
EDELSON P.C.
999 West 18th Street, Suite 3000
Denver, CO 80202
swoodrow@edelson.com
mlindsey@edelson.com

*Attorneys for Plaintiff and the Putative Class*

*s/ Katya H. Moses*
Katya H. Moses