**IN THE UNITESD STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Philip A. Brimmer**

Civil Action No.:    1:13-cv-2646-PAB-MEH

**SHANNON CLARK**, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

**GREEN TREE SERVICING LLC**, a Delaware limited liability company,

     Defendant.

---

**PLAINTIFF'S REPLY IN SUPPORT OF FIRST MOTION TO COMPEL THE**
**PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES (DKT. 43)**

---

## I.     INTRODUCTION

This Court should grant Plaintiff Shannon Clark's ("Plaintiff" or "Clark") Motion to Compel. In its Opposition, Green Tree Servicing LLC ("Green Tree" or "Defendant")—in addition to presenting premature arguments railing against class certification—seeks to have this Court deny Clark the very discovery she needs to demonstrate that the putative Classes should be certified. Indeed, despite repeated promises that documents would be forthcoming (and multiple extensions granted by Clark and her attorneys), Green Tree waited until after Clark filed her Motion to Compel to produce any policies and procedures—and now claims its tardy "production" resolves most of the issues set forth in Clark's Motion to Compel. In reality, Green Tree continues to withhold relevant policies, procedures, and information responsive to several interrogatories and document requests.

Green Tree also presents the declaration of Merle "Chip" Hidinger, a (previously undisclosed)[1] Vice President of Client Management who says sampling isn't feasible because Green Tree didn't track whether it was honoring Bank of America ("BAC") trial period plans ("TPPs") or properly converting signed modification documents ("PMAs") into permanent modifications (both of which it was required to do). Green Tree asserts that Plaintiff isn't entitled to receive any policies or procedures imposed by investors other than BAC, who owns Plaintiff's loan. Green Tree appears willfully confused: Plaintiff seeks discovery relating solely to the Home Affordable Modification Program ("HAMP").

In the end, Green Tree's arguments boil down to an assertion that it shouldn't have to provide responsive information because it failed to keep records as required. As such, this Court should grant Plaintiff's Motion to Compel, order Green Tree to produce the requested policies and procedures, and order Green Tree to produce sample files or, in the alternative, allow Plaintiff time to depose Mr. Hidinger regarding Green Tree's ability to isolate and query appropriate sample populations.

## II.   ARGUMENT

### A.   Green Tree has not Produced Policies and Procedures Responsive to Requests to Produce Nos. 6 and 8 and Interrogatory No. 7.

Green Tree first claims that it has produced the policies and procedures related to HAMP TPPs and PMAs that Plaintiff had sought via Requests to Produce Nos. 6 and 8 and that this issue has been resolved. (*See* Opp. 3.) Green Tree also claims it withdrew its objections to Interrogatory Nos. 6 and 7. (*Id.* 4.) While its true that Green Tree supplemented its production

---

[1] (*See* Green Tree's Rule 26(a)(1) Disclosures, attached hereto as Ex. A.) Further, at no time during the meet and confer process did Green Tree disclose Mr. Hidinger's untested testimony.

after Plaintiff filed her Motion to Compel with certain policies, Green Tree's responses to

Requests Nos. 6 and 8 or Interrogatory No. 7 remain incomplete.[2]

Contrary to its assertion, Green Tree has not produced policies and procedures that

explain how Green Tree determines a borrowers' eligibility to receive a HAMP TPP, how

payments are collected and applied, or other details relating to its provision of TPPs to

borrowers. (Decl. of M. Lindsey, ¶ 4, attached as Ex. B.) Green Tree also hasn't produced

policies and procedures showing when and how it provides borrowers with HAMP PMAs, when

Green Tree executes PMAs, or any other details relating to Green Tree's provision of PMAs to

borrowers. (*Id.*) Instead, Green Tree produces high-level, general information relating to what it

calls Resolve Policies and Permanent Rate Modifications. (*Id.*) These policies and procedures

fail to provide a complete response to Request Nos. 6 and 8 and Interrogatory No. 7 and Green

Tree should be required to search for and produce additional responsive policies and procedures

and/or supplement its interrogatory response.

---

[2] Request No. 6 seeks "policies and procedures related to HAMP" TPPs including "policies and procedures Relating To TPPS that were approved by another Servicer before the MSRs were transferred to Green Tree, [its] review and/or re-review of Borrowers' eligibility to receive a TPP, and [its] collection and application of HAMP trial payments." (Ex. G to Mot.) Similarly, Request No. 8 seeks "policies and procedures Relating to HAMP" PMAs, including "policies and procedures Relating To [its] conversion of Borrowers with PMAs to permanent modifications, [its] re-review of Borrowers' eligibility to receive a permanent modification, and/or [its] decision to provide Borrowers with new PMAs for their signature. (*Id.*) Likewise, Interrogatory No. 7 asks Green Tree to describe its "policies, practices, and procedures for reviewing borrower eligibility for HAMP TPPs, including an explanation of all steps taken and factors reviewed or considered prior to providing the Borrower with a TPP." (Ex. I. to Mot.)

**B.    Green Tree Has Similarly Failed to Produce Documents That Provide Complete Responses to Interrogatories Nos. 2, 5, 6, 17 and 19 or the Documents Plaintiff Seeks Via Requests to Produce Nos. 4 and 14.**

Next, Green Tree claims that its production resolves any issues with respect to Requests to Produce Nos. 4 and 14. (Opp. 3.) This is simply incorrect. Furthermore, and as Plaintiff explained in her opening brief, Green Tree did not provide substantive responses to Interrogatories Nos. 2, 5, 6, 17, and 19, but instead referred Plaintiff to its document production under Rule 33(d). Green Tree simply ignores these Interrogatories in its Opposition, and Plaintiff's review of Green Tree's recent production shows that those documents fail to provide a complete response to the Interrogatories. (Lindsey Decl. ¶¶ 5, 6.)

Interrogatory No. 2 asks Green Tree to describe its policies and procedures relating to its drafting of Validation Notices[3] for borrowers whose MSRs have been transferred to Green Tree during the time from January 1, 2012 through the present. (*See* Ex. I to Mot.) Similarly, Request to Produce No. 4 seeks policies and procedures relating to the generation of Validation Notices from January 1, 2012 through the present. (*See* Ex. G to Mot.) The policies and procedures that Green Tree produced (*Loan Servicing Transfers* and *Servicing Transfers – Data Integrity and Audits*) were published November 15, 2010 and April 15, 2013 and both policies appear to contain material revisions from the earlier policies. (Lindsey Decl. ¶ 5.) To the extent there were any revisions made during the two-year period stretching from November 2010 through April 2013, Plaintiff requires documents reflecting those changes. Further, the policies produced by Green Tree are merely an "overview of the efforts Green Tree undertakes relative to the transfer of loan servicing rights" and do not provide the specific information sought via Interrogatory No.

---

[3] Validation Notices are written notices sent by a debt collector to a consumer pursuant to Section 809(a) of the Fair Debt Collection Practices Act.

2, such as the process used to determine the "amount of debt" included in the Validation Notice. (*Id.*) Green Tree should therefore be compelled to supplement its production and/or interrogatory response with complete documents.

With regard to Interrogatory No. 5—which asks Green Tree to describe its policies and procedures for obtaining and viewing loan files that are transferred to Green Tree (*see* Ex. I to Mot.)—the policies and procedures that Green Tree produced again contain a two-year gap from November 2010 to April 2013 and fail to provide adequate detail for Plaintiff to ascertain the information sought. (Lindsey Decl. ¶ 5.) Green Tree should supplement its Interrogatory response and produce complete policies and procedures.

The same holds true with regard to Interrogatory No. 6, which asks Green Tree to describe its policies and procedures for honoring HAMP TPPs that were entered into by BAC before the servicing rights were transferred to Green Tree. (*See* Ex. I. to Mot.) Green Tree's response to this Interrogatory—which seeks information going to the heart of this lawsuit—again refers Plaintiff to the same incomplete policies, which suffer from a two-year gap in information and which fail to describe Green Tree's policies for ensuring that it honored the HAMP TPPs it received from BAC.

Interrogatory No. 17 asks Green Tree to describe its policies and procedures for providing borrowers with notice regarding any Adverse Action taken against them. (*Id.*) Request to Produce No. 14 similarly asks Green Tree to produce polices and procedures relating to its sending of notices to borrowers against whom Green Tree has taken Adverse Action. (Ex. G to Mot.) Although Green Tree produces polices styled *Fair Lending and Loan Servicing Plan*, these policies focus largely on discriminatory practices and do not actually describe Green Tree's

policies and procedures relating to Adverse Action or Adverse Action notices. (Lindsey Decl. ¶ 6.) Green Tree should be compelled to supplement its production and interrogatory response with information that is actually responsive.

Finally on this point, Interrogatory No. 19 asks Green Tree to describe its policies and procedures for investigating the accuracy of information it reports to credit reporting agencies, including the investigation of disputes. (Ex. I to Mot.) Green Tree provides a single policy published in September 2012 that relates to disputes but does not produce any policy that would enable Plaintiff to ascertain Green Tree's policies and procedures for ensuring that the information it first reported to the CRAs is accurate. (Lindsey Decl. ¶ 7.) Green Tree should be compelled to supplement its document production and interrogatory response accordingly.

**C.    This Court Should Compel Green Tree to Produce Sample Loan Files in Response to Requests to Produce Nos. 21, 22, and 23.**

Green Tree next argues that it shouldn't be required to produce sample borrower files in response to Requests to Produce Nos. 21, 22, and 23 because the requests supposedly do "not seek relevant evidence" and are "overly broad [and] unduly burdensome" because a file-by-file review would be needed to identify the sample populations. (Opp. 6.)

First, with regard to Request No. 21, Green Tree admits that the sample population can be ascertained on a month-by-month basis and it has not made any showing that doing so would be particularly burdensome. *See Sonnino v. Univ. Kansas Hosp. Auth.*, 220 F.R.D. 633, 653 on reconsideration in part sub nom. *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661 (D. Kan. 2004) (party asserting unduly burdensome must establish facts to justify the objection). As such, there is no justification for denying the requested sampling on this Request.

Further, Green Tree's relevance objection is misplaced. While Green Tree focuses on the Class involving borrowers who received TPPs before their loans were transferred (Opp. 7), this Sample is intended to gain information regarding the Former BAC Class, defined as: "All homeowners nationwide who had home mortgage loans serviced by Bank of America ("BAC") from September 27, 2012 through the present where the servicing of such home mortgage loans was transferred from BAC to Green Tree." (Dkt. 1, Compl. ¶ 64.) Therefore, the Request, which asks for a Sample of borrowers "whose loans were in default when the MSRs for their loans were transferred from BAC to Green Tree," seeks plainly relevant information.

Second, with regard to the sampling sought via Requests Nos. 22 and 23, Mr. Hidinger asserts that Green Tree would need to review thousands of individual files and that each review could take fifteen to twenty minutes per loan. (Opp. 8, Hidinger Decl. ¶ 8.) This claim is suspect. Under HAMP, servicers like Green Tree maintain and report specific data, including the date a Green Tree officer signed the loan modification and the Modification Effective Date, which must be earlier than or equal to the date the official loan transaction is submitted. HAMP Data Dictionary – 4/1/13 Release, available at: www.hmpadmin.com (last visited August 5, 2014). Green Tree's assertions that it kept poor records are therefore suspect. Further, Green Tree did not previously disclose Mr. Hidinger as an individual possessing relevant information (*see* Ex. A), did not mention him at all during the Parties' meet and confers, and Plaintiff has not been given any opportunity to depose Mr. Hidinger with respect to his assertions. As such, at a bare minimum Plaintiff should be afforded the opportunity to depose Mr. Hidinger and present any pertinent testimony to the Court while sampling as to the first set of borrowers (loans in default when transferred from BAC to Green Tree) is allowed to proceed.

Further, Green Tree's argument that sampling is too burdensome because of the supposed time and expense involved with redacting documents (Opp. 8) is a red herring. A protective order has been entered in the case. (Dkt. 35.) Further, Green Tree has not made any showing that such documents actually need to be redacted beyond a claim that tax returns generally aren't discoverable. (Opp. 8-9.) Green Tree's authorities, however, are inapposite in that they relate to whether a "*litigant* has a personal right to privacy," *In re Dist. Court, City & Cnty. of Denver*, No. 09CV7235., 256 P.3d 687, 689 (Colo. 2011) (emphasis added), and are factually different from the circumstances here where Plaintiff merely seeks tax returns for purposes of sampling and such information will be subject to a protective order, protecting it from further disclosure.

In any event, and as Clark explained in her Motion to Compel, the documents she seeks are relevant and she has a compelling need for them—specifically, she anticipates that her class expert will need to use the loan files to opine as to whether damages can be calculated on a classwide basis for purposes of certification. (*See* Mot. 10-11.) Green Tree does not contest that the documents are relevant, nor does Green Tree dispute that Clark has a compelling need for them (beyond, again, asserting prematurely that her claims aren't certifiable).

Accordingly, even if Green Tree's authorities were applicable (they aren't), Clark has shown that the documents she seeks are relevant and that she has a compelling need for the information within those documents. Likewise, even if this Court were to determine that tax returns need not be disclosed, Green Tree should still be required to produce sample files containing the other documents that Plaintiff seeks, including the loan origination documents, correspondence between Green Tree and the Borrower, servicing and collection notes, and HAMP-related documents such as TPPs and PMAs. This Court should thus order Green Tree to

immediately produce the sample files sought via Requests to Produce Nos. 21, 22, and 23 or, in

the alternative, grant Plaintiff the opportunity to depose Mr. Hidinger regarding the information

presented in his declaration and Green Tree's ability to ascertain the sample populations.

### D. This Court Should Also Compel Green Tree to Produce HAMP Policies for All Investors In Response to Interrogatories Nos. 11 through 14.

Finally, with respect to Interrogatories Nos. 11 through 14, Green Tree argues that

responding would be too burdensome because, supposedly, Clark seeks its policies for any kind

of permanent modification, rather than just HAMP modifications. (*See* Opp. 9-10.) This is

simply wrong. Further, had Green Tree ever raised this purported point of confusion during any

of the Parties' meet and confers, Clark's counsel would've readily explained that Clark only

seeks policies and procedures related to HAMP TPPs and HAMP PMAs.[4]

Additionally, and as Plaintiff explained in her Motion, there is no reason to believe that

the requested policies are investor-specific or that there is any meaningful variation in the HAMP

policies and procedures followed by the different investors. (Mot. 13.) Indeed, the Resolve

Options and Permanent Rate Modifications policies that Green Tree produced are NOT tied to

any specific investor and instead appear to be Green Tree policies that apply to loans owned by

all investors. (Lindsey Decl. ¶ 4.) While Green Tree claims "each investor has its own policies

for implementing those modifications, which have evolved over time," Green Tree provides

nothing to show that each investor has different policies for implementing HAMP modifications

---

[4] Notably, the policies and procedures that Green Tree has produced fail to provide a complete response to Interrogatories Nos. 11-14 with regard even to BAC. As explained in Section II(A) *supra*, Green Tree's policies are not specific to HAMP policies, practices, and procedures and do not show the timing for when Green Tree provides borrowers with PMAs, how borrowers qualify to receive PMAs, or any other details relating to Green Tree's provision of HAMP PMAs to customers with BAC TPPs or even HAMP borrowers more generally.

(which are largely governed by the HAMP Directives published by the Treasury) or that, to the extent investors maintain their own policies, that there is any meaningful variation in such policies. (*See* Hidinger Decl. ¶ 5) (admitting that not all investors maintain their own guidelines.)

In the end, this case has been filed as a putative class action and the Class definitions are not limited to loans owned by BAC. Beyond arguing that Plaintiff supposedly can't certify her Classes, Green Tree has provided no justification for its refusal to produce HAMP policies and procedures required by its various investors. Such information bears directly on the contours of the alleged Classes (showing that investor policies did not vary supports inclusion in the Class of all borrowers subjected to the same or substantively similar policies). As such, this Court should overrule Green Tree's objections to Interrogatories Nos. 11 through 14 and compel Green Tree to produce the responsive documents.

## IV. CONCLUSION

Green Tree has failed to provide complete responses for several interrogatories and document requests, refuses to engage in sampling, and mistakenly claims Plaintiff seeks policies and procedures for all modification programs (rather than just HAMP). Green Tree admits that it received over 1 million loans from BAC between January 1, 2009 and June 30, 2014, but Green Tree refuses to produce critical information regarding how it received and processed those loans, ensured it was honoring BAC HAMP TPPs and HAMP PMAs, and the steps it took—if any—to make sure that it didn't breach those agreements by forcing borrowers to reapply.

WHEREFORE, Plaintiff Clark respectfully requests that this Court grant her Motion to Compel and order Green Tree to supplement its document production and interrogatory responses, and award such additional relief as this Court deems equitable, reasonable, and just.

Dated: August 6, 2014                              Respectfully submitted,

                                                   ___/s/ Megan L. Lindsey_____
                                                   One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@edelson.com
Megan L. Lindsey
mlindsey@edelson.com
EDELSON PC
999 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4877
Fax: 312.589.6378

*Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I, Megan L. Lindsey, an attorney, hereby certify that on August 6, 2014, I served the above and foregoing ***Plaintiff's Reply in Support of First Motion to Compel the Production of Documents and Interrogatory Responses*** by causing a true and accurate copy of such paper to be filed with the Clerk of the Court and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

    /s/    Megan L. Lindsey