# EXHIBIT E

## green tree
*relationships that work*

PO Box 6172
Rapid City, SD 57709-6172

# MONTHLY BILLING STATEMENT

### Account Information

| | |
|---|---|
| Account # | 893862714 |
| Billing Date: | 10/06/2012 |
| Escrow Balance*: | $ -1,439.54 |
| Corporate Advance Balance**: | $ 419.00 |
| Principal Balance***: | $ 243,046.34 |

| **NEXT PAYMENT DUE DATE:** | **11/01/2012** |
|---|---|
| Current Payment: | $ 1,265.87 |
| Past Due Payment: | $ 8,861.09 |
| Escrow Due: | $ 2,607.16 |
| Insurance Due: | |
| Additional Charges Due: | |
| Billed Late Charges: | |
| **Total Amount Due:** | **$ 12,734.12** |

#BWNKDVR
#INENIIKI9#

+ 0397712 000370363 096T01-055880-P7P8
SHANNON CLARK
10170 W BERRY DR
LITTLETON CO 80127-1856

*Escrow represents monies collected and held by servicer for the future payment of taxes and insurance
**Corporate Advances represents monies advanced by servicer to pay taxes, insurance, and any other amount currently due that are not part of an escrow account.
***This is not the amount required to pay your account in full.

### GENERAL INFORMATION

**CORRESPONDENCE ADDRESS**
Send inquiries (not payment) with your account number to
Green Tree
PO Box 6172
Rapid City, SD 57709-6172

**CUSTOMER SERVICE**
For account information
Phone # 1-800-643-0202
Mon - Fri 7AM - 8PM CST
Saturday 7AM - 1PM CST

www.gtservicing.com

Telephone calls may be monitored or recorded for quality assurance and training purposes.

**PAYMENT ADDRESS**
Green Tree
PO Box 94710
Palatine, IL 60094-4710

SEE REVERSE SIDE FOR ADDITIONAL CONTACT AND OTHER INFORMATION

### IMPORTANT MESSAGES

Contact AUDELIA E. at 1-800-643-0202, extension 61734.

**This communication is from a debt collector. It is an attempt to collect a debt and any information obtained will be used for that purpose.**

**YOUR ACCOUNT IS SERIOUSLY PAST DUE ! CALL 800-643-0202 FOR PAYMENT ARRANGEMENTS**

### ACCOUNT INFORMATION SINCE LAST STATEMENT

Account reflects transactions posted as of 10/06/2012

| Date Recv'd | Principal Amount | Interest Amount | Additional Principal | Unapplied Amount | INSURANCE Physical Damage | Supplemental Products | Other Insurance | Add'l Chrgs/ Late Chrgs | Escrow Amount |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

*00C442*

---

Detach and return this portion with remittance

## green tree
*relationships that work*

-Please make checks payable to Green Tree-
**ACCOUNT NUMBER 893862714**
Receipt of a personal check is authorization to collect payment electronically.

Extra Amt to Escrow
[   ][   ][   ].[   ][   ]

| PAYMENT DUE DATE | 11/01/2012 |
|---|---|
| TOTAL PAYMENT DUE | 12,734.12 |
| TOTAL ENCLOSED $ | [   ],[   ][   ][   ].[   ][   ] |

Enter total amount of payment enclosed

EQUAL HOUSING LENDER

Shannon Clark
10170 W Berry Dr
Littleton CO 80127-1856

GREEN TREE
PO BOX 94710
PALATINE, IL 60094-4710

89386271  4   00126587      0001273412

# green tree

relationships that work

SP0602-000

rev. 10/11

| FACTS | WHAT DOES GREEN TREE SERVICING LLC ("Green Tree") DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with and can include:<br>* Social Security number and income<br>* account balances and payment history<br>* credit history and credit score |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Green Tree chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Green Tree share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes – such as to process your transactions, maintain your account, and report to credit bureaus | Yes | No |
| For our marketing purposes – to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes – information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes – information about your credit worthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For non-affiliates to market to you | Yes | Yes |

| To limit our sharing | * Visit us online: https://secure.gtservicing.com/CustomerService/login.jsp<br><br>Please note:<br><br>If you are a *new* customer, we can begin sharing your information (30) days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|
| Questions? | Call toll free 1-800-643-0202 or go to www.gtservicing.com |

# EXHIBIT F

Investor Loan #          0

After Recording Return To:
Green Tree Servicing LLC
7360 South Kyrene Road, T214
Tempe, AZ 85283

2013053776
05/06/2013 01:11:25 PM    9 Page(s)
JEFFERSON COUNTY, Colorado

R $51.00
D $0.00

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA] _____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I")1: SHANNON CLARK
Lender ("Lender"): Green Tree Servicing LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 08/09/2005
Loan Number: ▓▓▓▓▓▓   Recorded 08/19/2005 Instrument No. ▓▓▓▓▓▓
Property Address [and Legal Description if recordation is necessary] ("Property"):

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations** . I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. I live in the Property as my principal residence, and the Property has not been condemned;
   C. There has been no change in the ownership of the Property since I signed the Loan Documents;
   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

---

1If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**See Attached letter**

1- MTG.
ORIGINAL

HAMP Agreement, 02/28/2012                                                                                      LTR-602

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. TIME IS OF THE ESSENCE under this Agreement;

   B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 04/01/2013.

   A. The new Maturity Date will be: 01/01/2038.

   
   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan and less Principal in the amount of $1,123.05 which has been forgiven. The new principal balance of my Note will be $258,868.43 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   
   C. Interest at the rate of 2.00000% will begin to accrue on the New Principal Balance as of 03/01/2013 and the first new monthly payment on the New Principal Balance will be due on 04/01/2013. My payment schedule for the modified Loan is as follows:


*See attached letter

HAMP Agreement, 02/28/2012

LTR-602



| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-24 | 2.000% | 03/01/2013 | $1,102.90 | $278.86 adjusts annually after year 1 | $1,381.76 adjusts annually after year 1 | 04/01/2013 | 297 |
| 25 | 2.000% | 12/01/2037 | $1,103.95 | Adjusts Annually | Adjusts Annually | 01/01/2038 | 1 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

- D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.
- E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.
- F. I agree to pay in full the Deferred Principal and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.
- G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

- A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.
- B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

HAMP Agreement, 02/28/2012

LTR-602

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

HAMP Agreement, 02/28/2012

LTR-602

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification



HAMP Agreement, 02/28/2012

LTR-602

Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC
Lender

_____(Seal)
Shannon Clark
Date  4/10/2013

By: _____
     4/22/13
Date
     Jess O. Kenis

Account#: ▮▮▮▮▮▮

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

HAMP Agreement, 02/28/2012                                                                                   LTR-602

State of Colorado

County of Jefferson

The foregoing instrument was acknowledged before me this 4/10/13 (date) _____ by _____ (name of person acknowledged) Shannon Clark.

My Commission Expires 12-01-2013 Witness my hand and official seal.

*Lisa Nelson*

Notary Public

[Seal: LISA NELSON, NOTARY PUBLIC, STATE OF COLORADO]

7

STATE OF Arizona

County of Maricopa

The foregoing instrument was acknowledged before me this <u>22 day of April, 2013</u> by

<u>Jeff D Koenig</u>, Director Default Services of Green Tree Servicing LLC a corporation, on behalf of the corporation.

*[signature: Dawn V. Asplund]*

DAWN V. ASPLUND
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires Oct. 10, 2016

LEGAL DESCRIPTION

The following described property located in the county of Jefferson:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ county of Jefferson state of Colorado.

9