# Exhibit G

# green tree



COPY

P.O. Box 6172
Rapid City, SD 57709-6172
1-800-643-0202
Fax 1-866-870-9919
GTServicing.com

June 11, 2013

SHANNON CLARK
████████████

#4

RE:   Green Tree Servicing LLC ("Green Tree") Account Number: ████████

Dear Shannon Clark:

Thank you for your recent inquiry regarding the above-mentioned account. Please be assured Green Tree Servicing LLC ("Green Tree") takes matters such as this seriously.

We regret any dissatisfaction you may have encountered during the modification process. Your income is calculated at the time of the trial period plan. Based on documents received, the income was calculated correctly. Please be advised the modification has been processed as outlined in the attached agreement and no changes are able to be made at this time.

Below is a breakdown for the new unpaid principal balance:

| | |
|---|---|
| $243,046.34 | Unpaid Principal Balance |
| $17,722.10 | Capitalized Amount for Advances ($5,063.40) plus Interest ($12,258.70) |
| -$776.96 | Less Borrower's Contribution |
| -$1,123.05 | Less Forgiveness Amount |
| $258,868.43 | New Unpaid Principal Balance |

Pursuant to the signed agreement, the new monthly payment amount on the home is $1,381.76 effective with the April 1, 2013 payment. This monthly payment amount was calculated accurately utilizing 298 months, instead of rounding to 300 months, along with the 2.00% rate and $258,863.43 unpaid principal balance.

Lastly, please find enclosed a copy of the escrow analysis completed on February 6, 2013 reflecting calculation of the $274.29 escrow shortage.

Thank you for your business. If you have any further questions or concerns, please do not hesitate to contact our Customer Service Department at (800) 643-0202, Monday - Friday, 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CT.

Sincerely,

Green Tree
Customer Service

/bkw/46/

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

This is an estimate of activity in your escrow account during the coming year based upon anticipated payments to be made from your escrow account.

Projected Escrow Disbursements:
Hazard      $1,241.00
Tax         $2,050.52

*[handwritten: Ins = $553.00 - pd in March]*
*[handwritten: Taxes = 2089.44]*

Total Projected Escrow Disbursements: $3,291.52  Escrow Payment Calculation: $3,291.52 / 12 = $274.29.

After performing your initial escrow analysis, your escrow account has a shortage of $274.29. You may either remit the escrow shortage or it will be spread over the next 60 months. To remit the escrow shortage, please send shortage payment to:

**Green Tree**
**Attn: Escrow Dept L800-LM**
**345 St. Peter Street**
**St. Paul, MN 55102**

Please contact us at 1-800-643-0202 if you have any questions.

Respectfully,

Escrow Administration
Green Tree

\* Green Tree Servicing LLC and related entities, including, for certain accounts, in Pennsylvania, Green Tree Consumer Discount Company.

**If you filed bankruptcy, this is not an attempt to collect a debt but is instead a legally required notice regarding your escrowed taxes and insurance.**

# EXHIBIT H

Investor Loan #                 0

After Recording Return To:
Green Tree Servicing LLC
7360 South Kyrene Road,  T214
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I")1: SHANNON CLARK
Lender ("Lender"):  Green Tree Servicing LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):  08/09/2005
Loan Number: ▮▮▮▮▮▮▮ Recorded 08/19/2005 Instrument No.▮▮▮▮▮▮▮
Property Address *[and Legal Description if recordation is necessary]* ("Property"):

▮▮▮▮▮▮▮▮▮▮▮

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable
Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on
the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may
previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this
Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a
signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2
have been satisfied.

1.  **My Representations** .  I certify, represent to Lender and agree:

   A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and
       (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage
       payments now or in the near future;
   B.  I live in the Property as my principal residence, and the Property has not been condemned;
   C.  There has been no change in the ownership of the Property since I signed the Loan Documents;
   D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to
       disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the
       Home Affordable Modification program ("Program"));
   E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this
       Agreement, including the documents and information regarding my eligibility for the Program, are true
       and correct;
   F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

_____

1If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this
document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

***See Attached letter**

1- MTG.
ORIGINAL

X        HAMP Agreement, 02/28/2012                                                                    LTR-692

2.  **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

   A.  TIME IS OF THE ESSENCE under this Agreement;

   B.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.  In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   C.  I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.**  If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect.  The first modified payment will be due on 04/01/2013.

   A.  The new Maturity Date will be: 01/01/2038.

 B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan and less Principal in the amount of $1,123.05 which has been forgiven.  The new principal balance of my Note will be $258,868.43 (the "New Principal Balance").  I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement.  I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

 C.  Interest at the rate of 2.00000% will begin to accrue on the New Principal Balance as of 03/01/2013 and the first new monthly payment on the New Principal Balance will be due on 04/01/2013.  My payment schedule for the modified Loan is as follows:



HAMP Agreement, 02/28/2012

LTR-602

X



C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.  Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement.  I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification

Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement.  (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC
Lender

_____ (Seal)
Shannon Clark
4/10/2013
Date

By: _____
5/22/13
Date
Jeff D. Koenig

Account#: ████████

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

State of _Colorado_

County of _Jefferson_

The foregoing instrument was acknowledged before me this _6/10/13_ (date) _____ by _____ (name of person acknowledged) Shannon Clark.

My Commission Expires _12-01-2013_. Witness my hand and official seal.

_Lisa Nelson_

Notary Public

Green Tree Servicing LLC
PO Box 6172
Rapid City, SD 57709
1-800-643-0202

relationships that work

# green tree

+ 0415735 000003393 046024 0061100 IEDL
SHANNON CLARK
███████████████████

February 06, 2013

███████████████████████████████

Re:    Initial Escrow Account Disclosure Statement
       Account No. █████████

Dear Shannon Clark:

Your monthly payment for the coming year will consist of the following:

| | |
|---|---|
| Principal and Interest | $1,265.87 |
| Escrow | $274.29 |
| Total Monthly Payment | $1,540.16 |

This is an estimate of activity in your escrow account during the coming year based on anticipated payments to be made from your account.



| | PAYMENTS TO ESCROW | | PAYMENTS FROM ESCROW | | | | ESCROW BALANCE | |
|---|---|---|---|---|---|---|---|---|
| Month | Projected | Actual | Projected | Description | Actual | Description | Projected | Required |
| | | | | | | Begin Bal | 1,498.83 | 2,194.36 |
| Jan 13 | 274.29 | .00 | .00 | | .00 | | 1,773.12 | 2,468.65 |
| Feb 13 | 274.29 | .00 | 1,025.26 | Tax | .00 | | 1,022.15 | 1,717.68 |
| Mar 13 | 274.29 | .00 | 1,241.00 | Hazard | .00 | | 55.44 | 750.97 |
| Apr 13 | 274.29 | .00 | .00 | | .00 | | 329.73 | 1,025.26 |
| May 13 | 274.29 | .00 | 1,025.26 | Tax | .00 | | 421.24- | 274.29 |
| Jun 13 | 274.29 | .00 | .00 | | .00 | | 146.95- | 548.58 |
| Jul 13 | 274.29 | .00 | .00 | | .00 | | 127.34 | 822.87 |
| Aug 13 | 274.29 | .00 | .00 | | .00 | | 401.63 | 1,097.16 |
| Sep 13 | 274.29 | .00 | .00 | | .00 | | 675.92 | 1,371.45 |
| Oct 13 | 274.29 | .00 | .00 | | .00 | | 950.21 | 1,645.74 |
| Nov 13 | 274.29 | .00 | .00 | | .00 | | 1,224.50 | 1,920.03 |
| Dec 13 | 274.29 | .00 | .00 | | .00 | | 1,498.79 | 2,194.32 |

PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATIONAL YEAR.

Cushion: $548.58

Under federal law, your lowest monthly balance should not fall below $548.58 or 1/6 of the anticipated payments from your escrow account, unless your mortgage documents or state law specifies a lower amount. According to your mortgage documents or state law, your lowest monthly balance should not fall below $548.58.

Green Tree Servicing LLC
P.O. Box 6172
Rapid City, SD 57709-6172

+ 0438689 000000038 09GTXX - 0925874
SHANNON CLARK

COPY

#1



MAKING HOME AFFORDABLE SM

HELPING YOU STAY IN YOUR HOME.

# HELPING YOU STAY IN YOUR HOME.



MAKING HOME AFFORDABLE

relationships that work

# green tree

*You may be able to make your payments more affordable.*
## *Act now to get the help you need!*

July 19, 2013

SHANNON CLARK

████████████████

Green Tree Servicing LLC
P.O. Box 6172
Rapid City, SD 57709-6172

Re: Green Tree Servicing LLC ("Green Tree")
    Account Number: ██████████
    Property Address: ████████████████

Dear SHANNON CLARK:

**Congratulations!** You are eligible for a Home Affordable Modification. As previously described, if you comply with the terms of the Home Affordable Modification trial period plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage.

**How to Accept This Offer:**

## STEP 1   COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE

To accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by 08/18/2013. If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. We encourage you to make a copy of all documents for your records. If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

## STEP 2   CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME

Be certain to make any remaining trial period payments on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

Once your first mortgage is permanently modified under HAMP if you have a second mortgage on the same property, you may be eligible for a modification on your second mortgage under the Second Lien Modification Program ("2MP"). Please visit www.MakingHomeAffordable.gov/programs/second-mortgage-help/Pages/default.aspx to see if your second mortgage servicer is participating in 2MP. If your second mortgage servicer is participating, you should hear from them within 60 days. If not, please contact them directly to see if you are eligible for a modification.

We look forward to hearing from you no later than 08/18/2013.

Sincerely,

Green Tree
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages.  As part of this program, we — your mortgage servicer -- and the Federal Government are working to offer you options to help you stay in your home.

Attachments:  Summary of Your Modified Mortgage, Two copies of the Modification Agreement

**SUMMARY** | Here is a summary of your modified mortgage.

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on $1,123.05 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**PRINCIPAL FORGIVENESS.** To further reduce your mortgage payment, we will forgive a portion of your outstanding principal equal to $.00. You will never be required to repay this amount. However, there could be income tax consequences related to this forgiveness, and you should consult a tax advisor.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Green Tree will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Green Tree must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $278.86. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $274.29. You may pay this amount over a 5-year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.**

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES.** There are no fees or other charges for this modification.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth therein, including, but not limited to, the "My Representations" section are true and accurate. If you have any questions, please contact us at 1-800-643-0202.

Investor Loan #                 0

**After Recording Return To:**
Green Tree Servicing LLC
7360 South Kyrene Road, T214
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I")1: SHANNON CLARK
Lender ("Lender"):  Green Tree Servicing LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):  08/09/2005
Loan Number: ████████
Property Address *[and Legal Description if recordation is necessary]* ("Property"):

████████████████

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations** .  I certify, represent to Lender and agree:

   A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B.  I live in the Property as my principal residence, and the Property has not been condemned;
   C.  There has been no change in the ownership of the Property since I signed the Loan Documents;
   D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
   E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

_____

1If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Agreement;

B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 04/01/2013.

A. The new Maturity Date will be: 03/01/2053.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan and less Principal in the amount of $.00 which has been forgiven. The new principal balance of my Note will be $259,991.48 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. $1,123.05 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $258,868.43. Interest at the rate of 3.87500% will begin to accrue on the Interest Bearing Principal Balance as of 03/01/2013 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 04/01/2013. My payment schedule for the modified Loan is as follows:

LTR-602

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 3.875% | 03/01/2013 | $1,061.87 | $274.29 adjusts annually after year 1 | $1,336.16 adjusts annually after year 1 | 04/01/2013 | 480 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the Loan.  My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.   I agree to pay in full the Deferred Principal and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G.   If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.   **Additional Agreements.**  I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification

Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC                                   _____(Seal)
Lender                                                     Borrower

                                                           _____
                                                           Date

By:_____                          _____(Seal)
                                                           Borrower

_____                              _____
Date                                                       Date

                                                           Account#: ███████

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____   **[SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT]** _____